[Civ. No. 3520. Third Appellate District.—May 17, 1928.]

GEORGE DAVIS et al., Respondents, v. E. B. BROWN, Appellant.

W. I. Gilbert and Bryce P. Gibbs for Appellant.

E. B. Drake for Respondents.

PLUMMER, J.—The plaintiffs had judgment for personal injuries suffered by the plaintiff Nora Ellen Davis arising from an automobile collision between an automobile controlled and managed by the defendant, in which the said Nora Ellen Davis was riding, and a certain other automobile known as and called in the testimony the "Chevrolet." The judgment also covered the costs and expenses incurred by the plaintiff George Davis. From this judgment the defendant appeals.

The complaint alleges and the answer admits that the defendant E. B. Brown during all the times mentioned in the complaint was doing business under the fictitious names of Brown's Auto Tours and Brown's Pierce Arrow Auto Tours; that the business so conducted was owned individually by the defendant. The complaint also alleges that on January 14, 1925, while the plaintiff Nora Ellen Davis was riding in an automobile as a guest of the defendant, and which automobile was owned and operated by him, northerly on North Broadway, and while traveling northerly through a certain tunnel known as the North Broadway tunnel, the defendant, through his agents and employees, so negligently

operated the automobile in which plaintiff was riding that it collided with a certain other automobile then and there driven by one Mrs. E. W. Smith, which automobile was traveling southerly in said tunnel. The answer denies that the automobile was owned by the defendant, but does admit that it was being operated and controlled by the defendant and was being driven by a chauffeur employed by the defendant. The answer further denies that the plaintiff Nora Ellen Davis was riding as the guest of the defendant.

While it is alleged in the complaint that the plaintiff Nora Ellen Davis was riding as a guest of the defendant, and denied in the answer, the facts show that the said Nora Ellen Davis was really riding as a passenger for hire in the automobile controlled and operated by the defendant. The legal status of the parties involved is clearly shown by the statement of facts contained in the appellant's opening brief, from which we take the following excerpts: "The accident occurred January 14, 1925, at about 11:30 A. M. in the North Broadway Tunnel which is situate between Temple Street and Sunset Boulevard in the City of Los Angeles, and runs in a northerly and southerly direction. The automobile involved in the accident was a seven-passenger Lincoln sedan, and had been hired out by the defendant, together with the driver, to a real estate firm which was engaged in the business of selling lots in a new addition. The passengers of the car, including the plaintiff, were prospective purchasers and guests of this real estate firm, and had been picked up at their homes in different parts of the city for the purpose of being transported to the new real estate tract." The record discloses that after the tour had commenced it was discontinued on account of rain and the different persons carried in the car were being conveyed back to their respective homes at the time of the collision. It appears that when the Lincoln sedan had traveled about one-fourth of the way through the tunnel, the driver thereof suddenly applied the brakes in an attempt to prevent colliding with a car in front of him, and in so doing, swung to the left in front of a Chevrolet car traveling in the opposite direction, and the collision occurred which resulted in the injury to the plaintiff Nora Ellen Davis. No issue is raised as to the amount of the judgment. The points relied upon by the appellant are, first, that the verdict is contrary

to the evidence; second, that the proof discloses no negligence on the part of the defendant; third, that the court erred in its instructions to the jury.

The testimony of the driver of the Lincoln sedan is to the effect that he entered the tunnel from the south, driving in a northerly direction; that his speed was about 14 or 15 miles an hour; that when he was about a quarter of the way through, all at once a Ford car loomed up ahead of him, spinning around crosswise of the tunnel; that it had been raining and water had been carried into the tunnel by the traffic; that the pavement was very slippery; to prevent striking the Ford he applied his brakes, thereby immediately causing the rear of his own car to skid around sidewise to the left, and that his car was struck by a Chevrolet which was on the west side of the tunnel traveling in a southerly direction; that the sedan was struck toward the rear end on the left-hand side where the plaintiff Nora Ellen Davis was sitting; that he did not attempt to pass any other car in the tunnel, and was at all times on the right-hand side of the road until he applied his brakes, at which time his own car skidded sidewise and the rear portion thereof went past the center of the road.

The plaintiffs' version of the accident, and as supported by their witnesses, is to the effect that the Lincoln sedan entered the tunnel traveling at a speed estimated from 20 to 25 miles per hour; that the sedan was pulled to the left as if to pass a car in front, and then the driver suddenly pulled the front of the car back to the right, causing his car to skid and slide sidewise to the left of the tunnel and to crash into the Chevrolet car, which was approaching from the south. The width of the portion of the tunnel used by vehicles, as referred to, is 30 feet and 6 inches. There is some testimony to the effect that there would be room for the sedan to have gone between a car in front of it and a car traveling in the opposite direction on the other side of the tunnel.

After summarizing the testimony and argument to the effect that it was not sufficient to show negligence on the part of the driver of the Lincoln sedan, the appellant makes this statement: ''Taking the highest estimate of the plaintiff and her witnesses, it will doubtless be conceded that the rate of speed of defendant's car did not exceed the

limit fixed by the Motor Vehicle Act." This statement evidently refers to subdivision 7 of section 113 of the Motor Vehicle Act [Stats. 1923, p. 554], as it read prior to the amendment adopted in 1927. The record in this cause, however, does not support appellant's contention in this particular. The Motor Vehicle Act does not fix any definite number of miles per hour at which speed a driver may propel an automobile and escape responsibility on the claim that he is not exceeding the speed limit designated at so many miles per hour in the act. The first subdivision of section 113 of the Motor Vehicle Act provides: "Any person driving a vehicle on the public highways of this state shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and no person shall drive any vehicle upon a public highway at such a speed as to endanger the life, limb or property of any person." This subdivision applies, irrespective of whether the automobile is being driven at 15 miles per hour, 20 miles per hour or 40 miles per hour, as the statute now reads. If the circumstances under which the automobile is being driven require that it be propelled at a rate less than 15 miles an hour, then any rate of speed in excess of that which the circumstances permit as safe or reasonable in order to protect life, limb, or property would be unlawful. In this case the testimony shows that as the automobile entered the tunnel it was proceeding on a downgrade which had become wet and slippery by reason of the falling rain, and under such circumstances the driver of the Lincoln sedan was required by the Motor Vehicle Act to drive at a careful and prudent speed and not at a speed which would endanger life, limb, or property of the persons of any of his passengers. If, under such conditions, driving at a rate of 15 miles per hour, the car was likely to skid upon the application of its brakes and crash into cars moving in the opposite direction, such a rate of speed would be unlawful and the jury would have a right to consider that under the circumstances the driver of the car was not exercising reasonable and proper care or having due regard to the traffic or surface of the highway on which he was traveling. The testimony leaves somewhat in doubt the question as to whether the Lincoln sedan had its headlights burning,

but assuming that the driver of the Lincoln sedan had turned on the lights, in accordance with his statement that "he usually turned on the lights," the conclusion would necessarily follow that he was driving into the tunnel at a rate of speed which, under the conditions, prevented him from having control of his car so that he could stop within the distance that other objects in the tunnel ahead of him could be seen by the use of such headlights. The testimony of the plaintiff Nora Ellen Davis was to the effect that the Lincoln sedan was traveling between 20 and 25 miles per hour going into the tunnel and at the time when they caught up with a line of cars going in the same direction through the tunnel; that the Lincoln was pulled to the left as if to pass the car in front, and then suddenly slowed down and pulled back to the right, when the car began to skid sidewise and skidded over to the left side of the tunnel and crashed into another car. The testimony of Mrs. Smith, who was driving the Chevrolet with which the Lincoln collided, is to the following effect: There seemed to me a complete line of cars on each side so far as this witness could see. When she was about halfway into the tunnel she saw a car pull out of line and come toward the west side or side of the tunnel on which she was driving, and as the car got part way across, it seemed to be going back into line. At that time the rear end of the Lincoln started to skid and came toward the Chevrolet. This witness testified that the Lincoln skidded about 100 feet and hit the front of her car; that her car was standing still at the time; that she was driving a Chevrolet sedan; that the collision pretty nearly demolished the Chevrolet; the radiator was all smashed, front axle broken, all the tires completely ruined; both fenders broken off, and the body of the car was out of alignment. This witness testified that she saw the driver of the Lincoln turn out as if to start around a car in front traveling on the left thereof. The witness Hazel Curran, also a passenger on the Lincoln sedan, testified that the accident occurred somewhere near the center of the tunnel; that she was sure that they were not going slow; that there was a line of cars coming on the opposite side of the tunnel. This witness testified that she would say that the Lincoln attempted to pass the line of cars in front, and then the driver tried to get back into line again, and as he did

so, the car skidded and crashed into the car coming toward the Lincoln; that it did not seem to her that the Lincoln slowed down any; that the driver of the Lincoln turned to the left and then turned to the right and the car skidded. The witness Mrs. McKay testified that she was a passenger in the Lincoln sedan; that they were traveling northerly through the tunnel, approximately halfway through; that the driver of the Lincoln pulled out as if to pass some machine ahead of him going northerly in the same direction, ond then started to pull back into the line of traffic, and the car skidded; that her opinion was that the Lincoln was going quite fast. A witness by the name of Balderson, who was in the tunnel at the time, testified that the Lincoln appeared to pull to the left and then back into line again; that he had driven cars for quite a while; observed different kinds of cars; that he would judge the Lincoln was traveling between 20 and 25 miles an hour when it turned out of the line of traffic and back in again; that the Lincoln skidded about 100 feet before it struck the Chevrolet, driving it up against the curb and back into the car in which the witness was riding; that the Chevrolet was driven back between 40 and 50 feet. On the part of the defendant there was testimony to the effect that the Ford car skidded and bumped into a car in front of it. The Ford car was traveling at a speed of between 10 and 15 miles per hour. The driver of the Lincoln testified that he did not see anything ahead of him; that all at once a Ford car loomed up ahead; it was spinning around in the tunnel; when the Lincoln skidded and was hit by the other car, the end of it was over on the left-hand side going north; that there was no car ahead for him to pass; that he did not attempt to pass any other car in that tunnel; that he did not have skid chains on his car. As to the use of headlights, the driver testified: "I may have put my lights on; I usually do; I would say I did; I have good headlights. It might have been the length of this courtroom from me when I first saw the Ford. (The courtroom then in use was 55 feet in length.) I don't believe I would be able to state how fast I was going at that time. I didn't see a line of cars in front of me going down the road. I might have had my brakes on these three car lengths, I think I testified, in skidding endwise. I saw it was impossible to avoid hitting the Ford in

front of me. Then I clamped my brakes on and put the car in second gear. That is when I skidded sidewise in the tunnel.''

The foregoing excerpts and also summary which we have given of the case we think establishes that there was sufficient testimony to support the verdict and to warrant the jury in coming to the conclusion that the collision resulted from the negligent operation of the Lincoln sedan, and that if the driver of the Lincoln sedan had not been propelling the same at a rate of speed which was dangerous under the conditions presented, and at a rate of speed which rendered it impossible for him to control the same, the collision would not have occurred.

Has a miscarriage of justice resulted by reason of any alleged erroneous instructons gven by the court? Before considering this question we may refer to two sections of the Civil Code. The complaint would apparently make applicable section 2096 thereof, which reads: ''A carrier of persons, without reward, must use ordinary care and diligence for their safe carriage.'' While the facts as disclosed by the testimony and as set forth by the appellant would make section 2100 of the Civil Code applicable, which reads: ''A carrier of persons for reward must use the utmost care and diligence for their safe carriage,'' etc. The testimony which we have set forth certainly justified the jury in coming to the conclusion that the driver of the Lincoln sedan did not use the utmost care and diligence in the management of the car or in controlling its speed when entering the tunnel on a downgrade when the pavement was wet and slippery.

The instruction complained of, after quoting a portion of the Motor Vehicle Act specifying on which side of the highway automobiles shall be driven, uses the following language: ''In this case there is a conflict in the testimony as to whether the defendant was endeavoring to pass another automobile or not. Plaintiffs claim that he was. The defendant claims that he was not but that an automobile suddenly was, some way or other, placed across the highway, and that it was unavoidable, and he necessarily had to turn out. It is for you to determine which, if either of those things is true.'' There is no testimony to the effect that the defendant claimed that he ''necessarily had to turn

out.'' There is testimony to the effect that his car did turn out, and that it skidded to the left after application of the brakes. The driver of the Lincoln sedan did testify that a collision with the car in front of him was unavoidable unless he applied his brakes, and the testimony we think shows very clearly that the Lincoln sedan was turned out of the line of traffic. Whether it was turned out for the purpose of avoiding the collision with the car in front, or whether it was turned out as a result of the sudden application of the brakes thereon is really immaterial to any conclusion that might be reached by the jury in this case. It is probable, and it is a reasonable inference from the testimony, that after the driver of the Lincoln sedan discovered the imminent danger of a collision with the car in front of him, that he did everything which he then and there knew to avoid such a collision. Whatever the cause, it was the skidding of the Lincoln sedan that resulted in the collision with the Chevrolet on the opposite side of the tunnel. Whether it was the turning of the Lincoln sedan out of the line of traffic moving northward, and turning back again, or the sudden application of the brakes that caused the car to skid, resulting in the collision, even though urged as important by appellant, does not appear to us to be a matter out of which prejudicial error might arise, in view of the fact that had the car been driven at a sufficiently low rate of speed to enable the driver to control the same within the radius of his vision, assuming that the headlights were burning, no collision would have occurred. A wet pavement downgrade in a tunnel certainly calls for the exercise of a degree of care that must be measured only by the circumstances and conditions presented, and not by any limited mileage per hour set forth in the Motor Vehicle Act, as being a lawful rate of speed under the conditions mentioned in subdivisions 4, 5, 6, and 7 of section 113 of said act. The first subdivision of said section 113 of the Motor Vehicle Act only applies to this case.

A careful reading of all the instructions given by the trial court to the jury in this cause shows that the defendant was not only not prejudiced, but was given the advantage of two instructions which, under the circumstances, we think erroneous. Among other things, the trial court instructed the jury in the following language: ''If you

should find that at the time and place of the accident, any automobile immediately preceding the automobile in which plaintiff was riding, suddenly slackened its speed or stopped, or attempted to stop, and in so doing skidded out of the line of traffic in the direction in which the automobile, in which plaintiff was riding, was being driven, and that thereafter the driver of the car in which plaintiff was riding, did all in his power to avoid a collision, then he was not guilty of negligence, and your verdict would have to be against the plaintiff and in favor of the defendant.'' This instruction is directly in line with the instruction condemned by the supreme court in the case of *Rush* v. *Lagomarsino*, 196 Cal. 309 [237 Pac. 1066], where the court instructed that if the defendant did all in his power, after discovering the presence of the plaintiff, to avoid injuring him, he was not guilty of negligence. In the instruction just quoted, the court excludes from the jury all consideration of the fact as to the Lincoln sedan being driven into the tunnel at an excessive rate of speed under the conditions presented, and at such a rate of speed, under the conditions presented, that the driver thereof could not exercise reasonable control thereof or take the necessary precautions or do the necessary things to avoid coming into collision with other automobiles that might be using the tunnel at the same time. The fact that the driver of the Lincoln sedan may have done all that could have been done in attempting to stop his car, and to avoid a collision after discovering the car in front of him, by no means relieves the defendant from the charge of negligence. If the Lincoln sedan, at the time of the discovery of the Ford car in front of it, was traveling at an excessive rate of speed under the conditions presented, the fact that he did all he could to stop under conditions which his driving had rendered it impossible for him to stop, instead of relieving the defendant, subjects him to the charge of negligence and justifies the conclusion of the jury that the negligence and the manner in which the Lincoln sedan was being driven proximately caused the injury of the plaintiff Nora Ellen Davis. ■ Again, the court instructed the jury that ''The mere happening of the accident in which plaintiff sustained injuries, if any, is not the slightest proof that the driver of the defendant's automobile was guilty of negligence.'' The instruction, of which

the foregoing is a part, is directly contrary to the holding in the cases cited in *Brown* v. *Davis*, 84 Cal. App. 180 [257 Pac. 877]. In the Davis case it was held that in an action for the death of an invited guest resulting from overturning of a car while in exclusive operation and control of the defendant, the presumption of defendant's negligence arose from such overturning, though only ordinary care needs to be exercised by the carrier of persons without reward under the Civil Code, section 2099. The court, in the Davis case, cites a large number of cases showing that where an accident occurs and a passenger is injured, which ordinarily would not occur if reasonable care were exercised, proof of the circumstances of the accident and the exclusive control of the car by the defendant raises the presumption of negligence, and that such a presumption is evidence in the case. In the case at bar we think the circumstances disclosed by the testimony surrounding the accident amply warranted the inference of the negligent driving of the car being operated by the defendant. In *Mansfield* v. *Pickwick Stages*, 68 Cal. App. 507 [229 Pac. 890], in an opinion written by Justice Langdon, we find the following: "Proof of the derailment of a train or of an automobile leaving the highway and going into a gulch or other similar accident calls for an explanation by the defendant or a possible inference of negligence on his part." See, also, *Morris* v. *Morris*, 84 Cal. App. 599 [258 Pac. 616]. In the instant case the defendant has had the benefit of two instructions which were more favorable than that to which he was entitled, against which there is offset the slightly erroneous instruction complained of and assigned as prejudicial herein. The two instructions cited as more favorable to the appellant than they should have been are not material herein only in so far as they are cited to show that the trial court was endeavoring to give the defendant a fair and impartial trial, and as we have just shown, taken as a whole the instructions were more favorable to the defendant than they should have been. Under such circumstances there is no ground for urging prejudicial error. Section 4½ of article VI of the constitution is a complete answer to the appellant's contentions.

The judgment is affirmed.

Bartlett, J., *pro tem.*, and Finch, P. J., concurred.