[Civ. No. 5613.   Third Appellate District.—November 2, 1936.]

# W. H. COLLINS, Appellant, v. ARCHIE GRAVES et al., Respondents.

Rae B. Carter for Appellant.

Butler, Van Dyke & Harris for Respondents.

PLUMMER, J.—This action was begun by the plaintiff to recover damages for and on account of injuries received in a collision which occurred on the seventh day of February, 1934, between an automobile in which the plaintiff was riding and a gasoline tank truck driven by the defendant, Archie Graves, and belonging to the Service Tank Lines, a corporation. The defendants had judgment, and from this judgment the plaintiff appeals.

The collision between the automobile, which was a Graham sedan, and the tanker truck, occurred on a narrow bridge which crosses Dry Creek about one mile south of Galt, in the county of Sacramento. This bridge is on U. S. Highway No. 99; is approximately 730 feet in length, with a roadway 19 feet and 4 inches in width. The approach to this bridge, both from its northerly end and also from its southerly end, is by a left curve. These curves are approximately several hundred feet in length. The radius of these curves is such that the approach to the bridge can be perceived for a considerable distance. The highway approaching the bridge from the south has a gradual rise for a considerable distance. From the north the incline of the highway is practically negligible. At the time of the collision the automobile in which the appellant was riding was approaching from the south. The

tanker truck was moving in a southerly direction, and had traversed over 500 feet of the bridge when the automobile came in contact with the left front of the truck. The truck had attached to it a trailer, and the length of the truck and trailer was approximately 51 feet. The width of the truck over all was 8 feet and 4 inches. The width of the automobile over all was 6 feet. The width of the two vehicles thus occupied 14 feet and 4 inches of the driveway. If the drivers of each vehicle allowed a clearance of 1 foot between what would be the trusses of the bridge on his right-hand side, there would remain just 3 feet of clearance between the two vehicles as they came to a meeting point on the bridge. It is thus apparent that a slight variation in the course of either vehicle would result in a collision. The driver of the automobile from the south testified that he had looked at his speedometer at about the time he reached the incline on the curve approaching the bridge from the south, and as nearly as he could make out, his speed at that point was approximately 42 miles per hour; that he shut off the power at that point and allowed his car to drift in free-wheeling until he reached the bridge, stating, however, that he did not know how fast he was moving when he entered the southerly approach of the bridge. He estimated his speed, however, at 25 miles an hour. The driver of the truck testified that he was driving 25 miles an hour just before he reached the northerly end of the bridge, applied his brakes gently, and reduced his speed to between 20 and 22 miles per hour. There is also some testimony in the record to the effect that the Graham car when it entered the bridge was traveling at a speed estimated at 40 miles an hour. Prior to the time when either vehicle had entered the bridge in question, it had been raining. The highway was wet; the bridge itself at that time had recently undergone repairs, and contained simply a board flooring with no cement or concrete or asphaltum covering. The testimony shows that the bridge was very slippery.

The plaintiff and C. A. Tarr, and a man by the name of Reif, were on their way from Fresno to the city of Sacramento, from which point the appellant was intending to proceed to the town of Folsom. The car in which they were riding belonged to the county of Fresno, of which

county C. A. Tarr was at that time the under-sheriff, and the appellant was the deputy sheriff. The mission of C. A. Tarr to Sacramento was to look up a witness wanted in a criminal case, supposed to be somewhere in the suburbs of Sacramento. The appellant's mission was to go on to Folsom and there interview an inmate of the State Prison for the purpose of gaining information wanted in a criminal case pending or under investigation in the county of Fresno. Both Mr. Tarr and the appellant had had assigned to them for use, certain automobiles. The Graham sedan had been assigned to the under-sheriff, C. A. Tarr. The appellant had assigned to him a Buick car. Just by whose orders this mission was undertaken does not very clearly appear, but it does appear that in order to save expenses it was agreed that the parties should ride in the Graham sedan, thus saving the wear and tear of one car.

The testimony of the witness Tarr, and the appellant, was to the effect that as they entered the bridge in question they saw a brown car ahead of them which either skidded or "shimmied" a little; that they noticed the tanker truck approaching from the north, and that the trailer attached to the truck skidded to the left, which would be over and partly across the path which would be used by the car in which they were riding, and that by reason of the skidding of the trailer, the collision was precipitated.

On the part of the defendants there is testimony by the driver of the tanker truck that no skidding took place. His testimony is corroborated by that of a witness named Phillips, who was driving an automobile somewhat to the rear of the tanker truck and trailer, and had slowed down as he came up to the tanker truck and trailer just before reaching the northerly approach of the bridge, and had not attempted to pass the truck and trailer on account of the narrowness of the bridge. This witness testified that the trailer did not skid until after the collision. The testimony of the driver of the truck is to the effect that just before the instant of the collision, the Graham sedan skidded slightly across the bridge and came in contact immediately with the left front of the truck; that as he saw the sedan ahead turn toward his truck, he turned slightly to the right, wedging the right front of the truck in the trusses of the bridge, causing sudden stopping, and the trailer

thereafter buckled, described somewhat as a jack-knife operation. Whether the trailer did or did not skid prior to the collision, the facts as we glean them from the record show that the Graham sedan struck the left front of the truck, and not any portion of the trailer.

Upon the part of the appellant it is contended that he was riding as a guest in the car driven by C. A. Tarr. On the part of the respondents it is claimed that Tarr and the appellant were engaged in a joint enterprise; were using a car not belonging to either one of them; that the appellant was not riding as an invited guest with Tarr, but through an understanding that only one car should be used in making the trip in order to save expenses for the county.

Upon this state of facts the jury returned a verdict favorable to the defendants. Appellant contends that the facts show defendants guilty of negligence as a matter of law, while the respondents answer that the verdict of the jury exculpates them from the charge of negligence. The verdict of the jury might well be as it was rendered without either of the foregoing contentions being true. The jury might very well have considered that under the climatic conditions, and also the condition of the highway prevailing at the time of the collision, all the parties engaged in the transaction might have been guilty of negligence. The jury might very well have reached the conclusion that the tanker truck, entering a bridge at a speed estimated at between 20 and 23 miles per hour, and the Graham sedan entering the same narrow bridge at a speed testified to by certain witnesses as proximating 40 miles per hour, in view of the prevailing climatic conditions and the condition of the surface of the bridge, were at speeds wholly unjustified. The fact that neither vehicle may have been exceeding the speed limit specified in figures contained in what is now section 511 of the California Vehicle Code is not determinative of the question of negligence. What this court said in the case of *Davis* v. *Brown*, 92 Cal. App. 20 [267 Pac. 754], applies to the circumstances here presented. In that case we had to consider the facts concerning a collision which occurred on a slippery highway, and it was there held that subdivision one of the then section 113 of the California Vehicle Act was applicable, specifying in

effect that one driving a vehicle upon a public highway should propel the same at a careful and prudent speed (etc.), having due regard to the surface and width of the highway, as well as traffic conditions. Here, we have a highway which the parties admit was slippery by reason of its being a rainy day, the parties knowing they were entering a narrow bridge with a clearance, as we have shown, of only a distance proximating 3 feet. Under such circumstances and conditions the jury may very well have concluded that all the parties were negligent, and therefore no recovery could be had by any one of them. The driver of the Graham sedan also testified that just immediately preceding the collision he swung his car to the left, which corresponds with the testimony of the driver of the truck that the sedan turned toward his truck and collided with the left front corner thereof. Again, if the jury believed the testimony of the witness Phillips, that neither the truck nor trailer skidded to the left preceding the collision, the defendants would not be liable, even though the truck driver entered upon the bridge at a negligent rate of speed, as the rate of speed under such circumstances would not be a proximate cause of the collision.

Appellant in his brief argues, in support of his contention that the speed of the Graham car was slowed down in approaching the bridge, the fact that the time elapsed between their leaving Fresno and reaching the bridge, in view of the distance traveled, indicated an average speed of only 40 miles per hour. This overlooks the fact that sixteen different municipalities of various sizes had to be passed through on the journey, and if the speed law was at all complied with, would lead to the conclusion that on the open highway the speed of the Graham car more nearly approached a velocity of 60 miles per hour than 40 miles. The injuries received by the occupants of the Graham sedan indicate that the car was traveling at an excessive rate of speed at the instant of the collision.

Aside from any negligence on the part of the driver of the Graham car, the appellant argues that he was a guest, and therefore is entitled to recover from the defendants on the testimony introduced by him touching their negligence.

Was the appellant really a guest riding in the Graham car?

The record, as we have stated, shows that both Tarr and the plaintiff were peace officers of the county of Fresno. They were riding in a car belonging to the county of Fresno. Each had a common purpose in coming to the city of Sacramento, to wit, the accomplishment of some service in behalf of the county, one to interview a witness supposed to be located somewheres in the suburbs of Sacramento; the other to proceed to Folsom for a similar purpose. Each had previously been assigned a separate car. To save expenses it was agreed that they should both ride in the car that had been assigned to the under-sheriff. The appellant was to drive the car from Sacramento to Folsom. They left Fresno together to complete the purposes of their assignments, and after making such investigations, as above referred to, they were to return by the same vehicle to Fresno. Neither of the men had any right to vary the purposes for which they had been assigned. It was their duty, and the duty of each one of them, to come directly to Sacramento, and one of them to proceed by the same conveyance to Folsom. There is nothing in the testimony indicating that Tarr had invited the appellant to ride with him as his guest or otherwise, to Sacramento. The record is absolutely silent as to an invitation of any kind. There is nothing in the record indicating that the appellant accepted any gratuitous offer to ride in the Graham car. The appellant was an occupant of the car belonging to the county of Fresno, driven by the witness Tarr. That is practically all that can be predicated upon the testimony in the record. Each officer was charged with the duty of proceeding to Sacramento, and one to go farther on to Folsom. Neither had a right to vary the course of the journey.

The law governing situations such as we are considering is tersely stated in the case of *Bryant* v. *Pacific Electric Ry. Co.*, 174 Cal. 737 [164 Pac. 385], from which we quote the following: "There seems to be no difference of opinion as to the rule that when two persons are engaged in a joint enterprise in the use of an automobile, the contributory negligence of one will bar a recovery by either if it is in a matter within the scope of the joint undertaking. (R. C. L.,

vol. 2, p. 1208, sec. 43.) But in order that there be such a joint undertaking it is not sufficient merely that the passenger or occupant of the machine indicate to the driver or chauffeur the route he may wish to travel, or the places to which he desires to go, even though in this respect there exists between them a common enterprise of riding together. The circumstances must be such as to show that the occupant and the driver together had such control and direction over the automobile as to be practically in the joint or common possession of it. 'Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management.' (*St. Louis etc. Ry. Co.* v. *Bell,* 58 Okl. 84 [159 Pac. 336, L. R. A. 1917A, 543] ; *Atwood* v. *Utah Light etc. Ry. Co.,* 44 Utah, 366 [140 Pac. 137] ; *Cotton* v. *Willmar etc. Ry. Co.,* 99 Minn. 366 [109 N. W. 835, 116 Am. St. Rep. 422, 9 Ann. Cas. 935, 8 L. R. A. (N. S.) 643].) ''

It was not necessary in the instant case for either officer to indicate to the other the course they were to travel in coming to Sacramento. Each had received his specific instructions. The man who sat behind the wheel was instructed to journey to Sacramento. The appellant who sat beside him was instructed to do the same thing. They were to use a car belonging to the county of Fresno. The appellant certainly had a right to insist upon being driven directly from Fresno to the city of Sacramento. Tarr had a right, as he was driving the car, to drive from Fresno directly to Sacramento, but he had no right to drive anywhere else. Their community of interest consisted in reaching Sacramento to accomplish the purposes of their assignment. There is no evidence in the record that either officer had a superior right to be heard in relation to the purposes for which the trip was being made.

A somewhat similar case is that of *Martin* v. *Puget Sound Electric Ry. Co.,* 136 Wash. 663 [241 Pac. 360], where the Washington Supreme Court ruled that the parties were engaged in a joint enterprise. Employees of a corporation were engaged in transporting lumber on a company truck

The lights of the truck went out and the engine stalled. One of the men (not the driver) went ahead and cranked the motor and then stood in the road at the side of the truck, where he was struck by a passing bus. The language of the court is as follows: "The appellant was not the driver of the truck, but both he and the driver were common employees of the same master and engaged in a joint enterprise. The negligence of the one is therefore necessarily imputed to the other."

The appellant has cited a number of cases where the parties were not held to be engaged in a joint enterprise, but those cases are all readily distinguishable from the conditions here presented for our consideration. The following elements were lacking in the cited cases: A common employer; a common purpose; an assignment to accomplish that purpose by some superior officer representing the common employer; a trip undertaken in the conveyance belonging to the common employer; the expenses borne by the common employer, and both having a right to insist that the vehicle belonging to the common employer be driven directly to the destination indicated by a superior officer of the county employer, and not a trip undertaken independently by either officer; and neither officer possessing any right to deviate from the purposes of his assignment. The respondents have cited a number of cases showing the existence of a joint enterprise, but the foregoing statement appears to us sufficient, without reviewing authorities *pro* and *con*.

In the instant case the plaintiff had the question of joint enterprise submitted to the jury by requesting the court to give, and the court giving the following instruction:

"Defendants have alleged that this plaintiff and the driver of the Graham sedan automobile in which plaintiff was riding, were engaged in a 'joint enterprise'. To constitute a joint enterprise such as would bar plaintiff's recovery for his damages, if any, if you find by a preponderance of the evidence that the driver with whom plaintiff was riding was negligent, there must be more than a common desire and common method of transportation. There must be a community of interest in the objects or the purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect

thereto. Each must have some voice and right to be heard in its control and management.''

Having tried the case on the theory that the testimony relating to the question of joint enterprise was such as to present a question of fact to the jury, it does not lie within the mouth of the appellant to now argue that the court erred in so doing, and that as a question of law it must be held that no joint enterprise is shown.

In *Noble* v. *Miles,* 129 Cal. App. 724 [19 Pac. (2d) 265], speaking through Mr. Presiding Justice Pullen, this court, following the rule stated in 2 California Jurisprudence, page 846, said: ''Parties must abide by the consequences of their own acts, and cannot seek a reversal of a case upon appeal for errors which they have committed or invited; and one who, by his conduct, induces the commission of some error by the trial court, or, in other words, who has invited error, is estopped from insisting that the action of the court is erroneous.''

A very similar case is that of *Carter Oil Co.* v. *Kennedy,* 137 Okl. 168 [278 Pac. 640], where the Oklahoma Supreme Court held: ''A party is bound by instructions given at his request, and cannot predicate error on a theory different from that embodied therein.''

To the same effect is the case of *Hutchins* v. *Richardson,* 100 Okl. 80 [227 Pac. 432]; *Martin* v. *Postal Union Life Ins. Co.,* 16 Cal. App. (2d) 570 [61 Pac. (2d) 333]; *United Bank & Trust Co.* v. *Hunt,* 1 Cal. (2d) 340 [34 Pac. (2d) 1001].

██ Upon the question of instructions it is further argued that the court erred in giving respondents' instructions numbered 3 and 7. Challenged instruction number 3 read as follows:

''Each of the parties to this action is entitled to a fair and impartial consideration of the evidence by you, and to equal and exact justice at your hands. In cases of this character it is grossly improper for the jurors to permit themselves to indulge in guesswork or to engage in speculation and conjecture as to the cause of the accident, or as to the extent of the injuries or damage sustained, if any. The jury must be guided entirely by the evidence that has been introduced, and by the instructions of this court, and you must keep in mind that before this plaintiff will be

entitled to recover any verdict whatever, he must prove to you by a preponderance of the evidence that at the time and place of the accident in question the defendants were negligent; that such negligence on their part, if any, was the proximate cause of the accident, and that as a result thereof this plaintiff was injured or damaged. If plaintiff has failed to prove each of these issues to you by a preponderance of the evidence, it would then be your duty to return a verdict in favor of defendants and against plaintiff.''

Challenged instruction No. 7 reads as follows:

''In this action it is not necessary for these defendants to disprove liability on their part. On the contrary, in this action it is necessary for plaintiff to prove that defendant, Archie Graves, was guilty of negligence in the operation of the vehicle being driven by him, and that such negligence on his part was the proximate cause of this accident. In so far as this action is concerned the mere proof of the fact that an accident happened, or the mere proof of the fact that plaintiff sustained injuries, is immaterial unless plaintiff further proves to you that that accident and those injuries were proximately caused by the negligence of the defendant, Archie Graves. Therefore, even if you should find from the evidence that plaintiff did sustain injuries as a result of this accident, it will still be your duty to return a verdict in favor of the defendants and against plaintiff, unless you find from a preponderance of the evidence that the defendant, Archie Graves, was negligent, and that his negligence was the proximate cause of the accident.''

Again, the appellant is confronted with having requested of the court, and having had given to the jury an instruction in the following language:

''You are further instructed, however, that the plaintiff must not only prove that the defendants were negligent by a preponderance of the evidence, but he must also prove by a like preponderance of evidence that such negligence of the defendants was the proximate cause of his injuries, if any. By proximate cause of an injury is meant that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred; it is the

efficient cause, the one that necessarily sets the other cause in operation.''

Under such circumstances the appellant is estopped from claiming error on the part of the trial court. The substance of the instruction given by the court to the jury at his request is identical with the substance of the challenged instructions. This removes all possibility of predicating error on the instructions challenged. See *Noble* v. *Miles, supra,* and other cases heretofore cited.

█ The court did not err in excluding testimony as to experiments tending to show how much an automobile would lessen its speed on the incline approaching the narrow bridge from the south, after shutting off the power. The circumstances were not shown to be the same; the climatic conditions were different; the wind pressure was not the same; the automobile was not the same. The admission of testimony of experiments is largely within the discretion of the trial court, but it must always be first shown whether the circumstances are similar or so similar as to render the result of experiments illustrative of the questions under consideration. It is not necessary to cite authorities to the effect that unless the circumstances are shown to be similar surrounding the experiments, the trial court does not commit error in excluding testimony in relation thereto.

It is further insisted that the court erred in limiting the cross-examination of one of the witnesses for the defense. Without setting forth the examination, it is sufficient to say that we find no merit in this contention.

The judgment of the trial court is affirmed.

Pullen, P. J., and Thompson, J., concurred.