**Albert PACHECO, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 8775.**

United States Court of Appeals
Tenth Circuit.

Oct. 31, 1966.

Juan G. Burciaga, Albuquerque, N. M., for appellant.

John A. Babington, Asst. U. S. Atty. (John Quinn, U. S. Atty., with him on brief), for appellee.

Before PICKETT and HILL, Circuit Judges, and CHILSON, District Judge.

CHILSON, District Judge.

The appellant was indicted and convicted on two counts for violations of federal narcotic statutes. The first count charged an illegal receipt and concealment of heroin in violation of 21 U.S.C. § 174, and the second charged the illegal sale of heroin in violation of 26 U.S.C. § 4705(a).

The appellant seeks a reversal of his convictions for three alleged errors. First, the trial court erred in not admitting into evidence a tape recording; second, the court erred in refusing to give a requested instruction; and third, the verdict is not supported by substantial evidence.

Summarized, the evidence produced by the government in support of the charges is as follows: Robert Aragon, an informer for the Federal Bureau of Narcotics, went to the appellant's house on September 19, 1965 and told the appellant he wanted to buy "a round of heroin." Appellant replied that he didn't have the heroin at that time but would have it the next day. The next day Aragon reported the conversation to narcotics agents Kelley, Jordan and Robinson who arranged for Aragon to make the purchase. Aragon was searched and relieved of his money and furnished $50 to make the buy after which Agent Jordan obtained a car. With Aragon driving and Jordan in the trunk they went to appellant's home, arriving there about 10:30 A.M.

Aragon testified he drove into the back yard of appellant's home where he sounded his horn. The appellant came from his house to the car and Aragon told him that he had the money. He gave the appellant the $50 furnished him by the agents and appellant then gave him (Aragon) a blue balloon and told him that the balloon contained only "four caps" whereupon Aragon told appellant to return to him $30 of the $50 and to keep $20. Appellant complied and returned $30 to Aragon who put it in his pocket.

Aragon then drove back to the place where he and Jordan had obtained the car. There he opened the trunk and gave Agent Jordan the balloon and the $30, and they then returned to the Federal Building.

Agent Jordan testified that while he was in the trunk of the car, the car came to a stop, the motor was turned off, and the horn sounded. Thereafter he overheard Aragon say that he had the money and that he was ready to make the transaction. Aragon then said, "this is not the complete round." The other party said he could only get "four caps."

Shortly thereafter Aragon drove back to the original starting place where Jordan got out of the trunk and Aragon gave him the $30 and the balloon. Jordan then searched the car and he and

Aragon returned to the Federal Building where Jordan searched Aragon. Jordan found nothing on Aragon and nothing in the car.

Robinson and Kelley in another car kept Aragon under observation until they arrived in the vicinity of appellant's home at which time Robinson and Kelley departed to places for observation of appellant's home. Robinson stationed himself on top of a double-decker car carrier which was parked in the railroad yard near appellant's home and Kelley stationed himself in the yard of an oil company located approximately 80 to 100 yards from appellant's home.

Robinson testified that he observed Aragon drive into the back yard of appellant's home about 10:30 A.M., that the car horn was sounded, and thereafter appellant came out of his house and walked over to the driver's side of the car. Aragon opened the door but didn't fully get out of the car. Robinson testified that he observed "what appeared to be a meeting of hands" between appellant and Aragon and then appellant stepped back from the car and shortly thereafter returned to his house. Thereupon Aragon drove away.

Kelley testified that from his station in the oil company yard he observed Aragon drive into the back yard of appellant's home. Aragon sounded the horn and appellant came out of the house, walked over to the car and handed something to Aragon. Shortly thereafter Aragon drove away. Kelley then got in his car, picked up Robinson and followed Aragon back to 6th and Silver Streets where Jordan got out of the trunk and searched the car which had been driven by Aragon. The agents and Aragon then returned to the Federal Building.

It was stipulated that the substance in evidence as plaintiff's Exhibit I was heroin; that it was obtained from Aragon and that it had been in the government's possession at all times since it was so obtained.

The appellant took the stand and testified in his own behalf. He admitted that he had met Aragon on September 20. He testified that Aragon came to his house about 8 o'clock in the morning and asked him to make a wallet for him. Appellant agreed to make the wallet for $10. Aragon said that he would be back later in the day with the money and he returned in about two hours. He drove into the back yard and sounded his horn. Appellant went to the car where Aragon gave him the $10 to make the wallet. Aragon stayed in the car and appellant handed him the money through the window. He talked with Aragon for two or three minutes and Aragon left.

■ The jury determined the conflict in the evidence against the appellant and the evidence is amply sufficient to support the jury's verdicts. The appellant's contention that the evidence is insufficient to sustain the verdicts is without merit.

■ The appellant tendered to the trial court an instruction which reads as follows:

"If you find from all the credible evidence presented that the informer had the opportunity on September 20, 1965, to obtain the narcotics in evidence either on his way to or on his return from the residence of the accused, you must return a verdict of not guilty."

The appellant assigns as error the trial court's refusal to give this instruction.

■ In support of this contention the appellant states that the evidence shows Aragon had ample opportunity to obtain the narcotics from a source other than the appellant. The evidence is to the contrary and shows that Aragon was under surveillance by Agents Kelley and Robinson from the time he entered the car with Agent Jordan until he returned to the starting point except for a short time when Agents Robinson and Kelley were stationing themselves to view the appellant's premises. Agent Jordan, who was in the trunk of the car, testified the only stops going to or coming from the appellant's home were of seconds' duration presumably for the obeyance of traffic signs. This evidence does not provide a

foundation for an instruction on the theory that Aragon obtained the heroin from some source other than the appellant. The defendant is not entitled to an instruction on a theory of the case that rests upon mere speculative assertions manufactured wholly from thin air. United States v. Clancy, 7 Cir., 276 F.2d 617 at 636.

■ Even if the appellant had been entitled to an instruction based on that theory the instruction tendered by the appellant is improper. Appellant cites no authority and we can find none that required a verdict of acquittal if there had been evidence that Aragon had an opportunity to purchase the heroin from a source other than the accused. Such evidence, if it existed, would be considered by the jury together with all the other evidence in the case in determining whether or not the accused had been proven beyond a reasonable doubt to have been the possessor and the seller of the drug in evidence, but such evidence would not require an acquittal.

The trial court properly refused the tendered instruction.

■ Shortly before the trial appellant's counsel and one Pickett participated in an experiment designed to impeach the testimony of Agent Jordan that he overheard the conversation between Aragon and the appellant.

Appellant's counsel obtained the automobile which Aragon drove and in which Jordan was concealed in the trunk. The experiment consisted of placing a portable tape recorder near the car with the microphone outside the car near the driver's window. Appellant's counsel seated in the driver's seat with the door closed and the window open read a transcript of a conversation which was recorded by the tape recorder. The microphone was held in a position "of a man talking to the man in the car."

The tape recorder was then taken to the rear of the car and the microphone placed in the trunk. Plaintiff's counsel then repeated the same conversation as before the tape recording was offered in

evidence "to show it would be almost impossible to overhear what Mr. Jordan maintains he overheard."

The court, out of the presence of the jury, heard the testimony of the witness Pickett which was presented as an offer of proof by appellant. Although the same car was used as the one in which Jordan was located at the time of the conversation, the testimony of Pickett discloses that the experiment was at a different place; the voice was that of appellant's counsel and not that of the appellant or Aragon; the car door was closed and not open as shown by the testimony and plaintiff's counsel spoke in a volume of voice "that anybody would normally use who was keeping a kind of hush-hush conversation outside the car." The evidence does not disclose that the conversation between Aragon and appellant on September 20, 1965 was a "hush-hush" conversation.

After hearing the offer of proof the court refused to admit the tape recording in evidence.

The rule which we have previously adopted governing the admission and exclusion of evidence of out-of-court experiments is set forth in Navajo Freight Lines v. Mahaffy, 10 Cir., 174 F.2d 305 at 310 as follows:

■■ The party offering evidence of out-of-court experiments must lay a proper foundation by showing a similarity of circumstances and conditions. The admission of experimental testimony is a matter resting largely within the discretion of the trial court. Beckley v. Alexander, 77 N.H. 255, 90 A. 878; National Pressure Cooker Company v. Stroeter, 7 Cir., 50 F.2d 642; Collins v. Graves, 17 Cal.App.2d 288, 61 P.2d 1198. As stated by the court in Hisler v. State, 52 Fla. 30, 42 So. 692, 695:

" * * * Evidence of this kind should be received with caution, and only be admitted when it is obvious to the court, from the nature of the experiments, that the jury will be enlightened, rather than confused. In

many instances, a slight change in the conditions under which the experiment is made will so distort the result as to wholly destroy its value as evidence, and make it harmful, rather than helpful."

Applying this rule to the case in question we hold that the trial court did not abuse its discretion in refusing to admit the tape recording in evidence.

The judgment is affirmed.