**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Oscar SQUELLA-AVENDANO,
Defendant-Appellant.**

**No. 72-1798.**

United States Court of Appeals,
Fifth Circuit.

April 13, 1973.

Rehearing Denied June 1, 1973.

---

51. We have done this hundreds of times in school integration cases.

Donald I. Bierman, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Bruce E. Wagner, Asst. U. S. Atty., Miami, Fla., Mervyn Hamburg, Appellate Sec., Crim. Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and MOORE[*] and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Oscar Squella-Avendano, a Chilean national and owner of a small cargo airplane, was convicted by a jury of the unlawful possession and importation of 202 pounds of cocaine. 21 U.S.C.A. §§ 173, 174 (repealed October 27, 1970); 26 U. S.C.A. §§ 4704(a), 4705(a), 7237. Defendant challenges the sufficiency of the evidence and certain procedural and evidentiary rulings, which he claims cumulate to the level of reversible error. We affirm.

### I. *Sufficiency of the Evidence*

In July, 1970, Government agents learned of a proposed shipment of cocaine from Chile and commenced a continuous surveillance in the Coral Gables, Florida, area of suspected individuals and an apartment used by co-defendant Rodolfo Quintanilla. On July 26th, a 1970 Ford bearing a rental license plate

---

[*] Hon. Leonard P. Moore, Senior Circuit Judge of the Second Circuit, sitting by designation.

was placed under surveillance. The following morning, Quintanilla, accompanied by another co-defendant, drove the Ford to Miami International Airport and left it at a nearby parking lot. Several hours later, defendant Squella drove this vehicle into the cargo area of the airport. The Government agents then espied him unloading certain cartons from his airplane, which he had flown to the United States from Chile five days before, and placing them in the trunk of the automobile. The agents' recollections differed as to whether defendant looked into any of the boxes.

Within a few hours, Squella returned the rented car to the same parking lot; and two hours later, the vehicle was picked up by Quintanilla, who was then lost by the agents for a period of some five to twelve minutes. When found, Quintanilla was observed unloading an unidentified box from the car's trunk to his apartment, the subject of the surveillance and the site of the arrest. Within a few minutes, the agents searched the apartment and found cocaine and wine bottles in suitcases and in cartons marked "Plinella," a Chilean brand of wine.[1]

Before this incident, Squella's name had never been brought to the Government's attention, and throughout the investigation he had never before been observed in association with the co-defendants. His broad defense is that he had taken a spontaneous trip to the Dominican Republic with a load of baby chickens and, upon his return, he thought he was unloading cartons of wine and a box of trash.

Defendant challenges the adequacy of the evidence to support the jury's conclusion that the cocaine found in Quintanilla's apartment came from defendant's plane, that the narcotics had been in the boxes which defendant unloaded from his plane, and that he was aware of their contents.

Although undisputed direct evidence shows that defendant unloaded boxes from the plane, only circumstantial evidence is available to prove that those boxes were the objects subsequently found in the apartment and that he was aware of their contraband contents. Government agents testified that, although they observed him inspect the cartons which he unloaded, they could neither view their contents nor identify markings on the boxes. Sixty yards away, an agent using field glasses faintly recognized some writing—"Planters," "Plants," or "peanuts," it was thought. There were neither fingerprints, clear markings, nor other direct evidence to show conclusively that the boxes unloaded by Squella were those found in the apartment or that he had knowledge of their contents.

As a reviewing court, we must decide whether reasonable jurors could conclude beyond a reasonable doubt that Squella knowingly unloaded from the plane the cocaine found in the apartment.

■ Two basic rules guide our consideration of the sufficiency of the evidence: the evidence must be viewed in the light most favorable to the Government, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and we must make all reasonable inferences and credibility choices as will support the jury's verdict of guilty. *See* Gordon v. United States, 438 F.2d 858 (5th Cir. 1971).

Having done this, however, we are at once confronted with the fact that certain events could have occurred which would be consistent with all of the evidence presented to the jury and which would prove the defendant innocent of the crime charged.

Among these hypotheses of innocence, for example, are the following scenarios:

---

1. In United States v. Squella-Avendano, 447 F.2d 575 (5th Cir. 1971), this Court held that the arrests, resulting from an informant's tip, were made on probable cause, and the consequent search of the apartment and seizure of the cocaine were proper.

(1) Squella, thinking the boxes he was unloading from the plane contained wine and trash, did not know that their actual contents were cocaine; (2) the cartons did not contain wine and trash when unloaded into the trunk of Quintanilla's automobile, but during the lapse in the Government's surveillance, the original cartons were replaced by similar ones containing cocaine, or their contents were simply changed; or (3) the cocaine found in the apartment came from someplace other than the trunk of Quintanilla's car and was either in boxes other than those Quintanilla unloaded or had been placed in those boxes upon their delivery to the apartment and before arrival of the agents.

The question for our determination is whether the jury verdict must be set aside because the Government's evidence did not entirely refute such hypotheses of innocence.

Some early cases held that circumstantial evidence must be inconsistent with *every* hypothesis of innocence. *See, e. g.,* Barnes v. United States, 341 F.2d 189 (5th Cir. 1965). Under that rule, reversal of Squella's conviction would be required. Other cases held that the evidence must be inconsistent merely with every *reasonable* hypothesis of innocence. *See, e. g.,* Cohen v. United States, 363 F.2d 321 (5th Cir. 1966), cert. denied, 385 U.S. 957, 87 S.Ct. 395, 17 L.Ed.2d 682; Newsom v. United States, 311 F.2d 74 (5th Cir. 1962). Observance of that rule, though, would cast this Court in the role of the jury. If one hypothesis of innocence were to satisfy this Court's sense of reasonableness, we would then have to reverse the verdict.

We have since settled on a standard which requires reversal of a guilty verdict unless the trier of fact "could reasonably find that the evidence excludes every reasonable hypothesis, except that of guilt." United States v. Sidan-Azzam, 457 F.2d 1309, 1310 (5th Cir. 1972); United States v. Garza, 426 F.2d 949 (5th Cir. 1970); Henderson v. United States, 425 F.2d 134 (5th Cir. 1970); Harper v. United States, 405 F.2d 185 (5th Cir. 1969); Roberts v. United States, 416 F.2d 1216 (5th Cir. 1969); Riggs v. United States, 280 F.2d 949 (5th Cir. 1960).

There is some suggestion that the above statement of the rule presents a standard which is different from or stricter than that set forth in United States v. Warner, 441 F.2d 821 (5th Cir. 1971). The *Warner* opinion dealt with Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), a case concerning requested jury instructions. *Holland* involved the net worth theory of proving income tax evasion. Contending that the Government's evidence did not disprove that nontaxable sources might be responsible for the increase in his net worth, the taxpayer argued that the trial judge should have instructed the jury that, where the Government's evidence is circumstantial, it must exclude every reasonable hypothesis other than that of guilt. Mr. Justice Clark, speaking for the Court, refused to follow such a rule:

"Circumstantial evidence in this respect is intrinsically no different from testimonial [direct] evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."

348 U.S. at 140, 75 S.Ct. at 137. In *Warner,* Judge Wisdom concluded from *Holland* that "The same test, therefore, for judging the sufficiency of the evidence should apply whether the evidence is direct or circumstantial." 441 F.2d at 825.

Reconciling the holding in *Holland* with some earlier Fifth Circuit cases which suggested a special rule for reviewing the sufficiency of circumstantial evidence, Judge Wisdom rephrased the substantial evidence test:

"[In] criminal cases based on circumstantial evidence our task is to determine whether reasonable minds could conclude that the evidence is inconsistent with the hypothesis of the accused's innocence. United States v. Andrews, 5 Cir. 1970, 427 F.2d 539, 540; Surrett v. United States, 5 Cir. 1970, 421 F.2d 403, 405. Notwithstanding these differences, which some might term verbalistic, we are in agreement with our brothers in other circuits that where the evidence be direct or circumstantial, the matter of the defendant's guilt is for the jury to decide unless the court concludes that the jury must necessarily have had a reasonable doubt."

441 F.2d at 825. *See* United States v. Sutherland, 463 F.2d 641 (5th Cir. 1972); 3 L. Orfield, Criminal Procedure Under the Federal Rules, § 26:446, at 778; 2 C. Wright, Federal Practice & Procedure § 467, at 259.

■ In the case at bar, we are concerned with the approach a reviewing court, either on motion at the trial level or on appeal, should take to the consideration of the sufficiency of the evidence to support a jury's guilty verdict. We are not considering questions regarding special jury instructions on circumstantial evidence, which are controlled by *Holland*. We have recently reasserted the *Holland* principal that, when a jury is properly instructed on the standards for reasonable doubt, it is not error to refuse an additional instruction on circumstantial evidence. United States v. Stokes, 471 F.2d 1318 (5th Cir. 1973).

Any conclusion that differing statements of the test for review might lead to different results rests on a futile exercise in linguistics. In both *Warner* and *Sidan-Azzam*, as well as the other cases which articulate the rule, the essential element is that, whether the evidence be direct or circumstantial, the matter is for the jury to decide unless the reviewing court concludes that *no* reasonable mind could find guilt beyond a reasonable doubt.

In our view, there is no logical difference between determining whether reasonable minds could conclude that the evidence is inconsistent with the hypothesis of innocence (*Warner*) and determining whether reasonable minds could conclude that the evidence excludes every reasonable hypothesis except that of guilt (*Sidan-Azzam*). However the test is articulated, the result will be the same if the standard is qualified by the minimum requirement that we must affirm any conclusion that could be reached by reasonable minds.

It is not by a casuistry of reason that we arrive at this result. A logician may defend the argument that, given our finite understanding of causation, all evidence is necessarily circumstantial, and both direct and circumstantial evidence, therefore, may sometimes point to an incorrect result. But the task of the jury is, in Mr. Justice Clark's words, to "use its experience with people and events in weighing the probabilities." 348 U.S. at 140, 75 S.Ct. at 138. The proper function of the reviewing court is merely to consider the reasonableness of the jury's conclusions.

■ Following this test, we find that reasonable jurors, from their individual and common experience, could have concluded from the evidence, beyond any *reasonable* doubt, albeit not beyond *all* doubt, that the boxes taken from the plane did contain cocaine and that Squella was aware of their contents. The jury, by making reasonable assumptions, could have dismissed each of the hypotheses presented earlier in this opinion and traced the cocaine found in Quintanilla's apartment through the preceding events to establish Squella-Avendano's knowing possession of the cocaine.

*First,* it is reasonable to assume that there was no explanation for the cocaine to have been placed in the cartons at the apartment. There is no evidence that any cartons, other than those from which the cocaine was being removed, were found. The jury could reasonably infer that these were the same boxes which were being carried into the apartment from the trunk of Quintanilla's automobile.

*Second,* the lapse in the surveillance of Quintanilla's automobile between the airport and the apartment was too brief to require, in the minds of reasonable men, any doubt that the cartons and their contents put in the trunk by Squella were the same as those unloaded by Quintanilla into the apartment.

*Third,* even if Squella's owning and piloting the plane would leave any doubt that he knew the nature of his cargo, or that he would unload boxes, the contents of which he did not know, the resulting questions could be resolved by the fact that two agents testified that Squella, while unloading the cargo, looked into one of the boxes. Since boxes of this size which were found in the apartment contained clear plastic bags of cocaine, the jury, having concluded that the cocaine was in the boxes when unloaded by Squella, could conclude beyond reasonable doubt that he had seen the cocaine at that time.

Although defendant might proffer many other contrary hypotheses, we find the Government presented sufficient evidence from which the jury could reasonably have concluded that defendant committed the narcotics offenses charged beyond reasonable doubt.

## II. *Procedural and Evidentiary Rulings*

Defendant alleges that the trial court abused its discretion by the

  (a) *limitation to three of the number of character witnesses;*

■ The trial judge is invested with discretion to limit the number of character witnesses. Absent a clear showing of prejudicial abuse of discretion, appellate courts will not disturb rulings of trial courts on this subject. United States v. Jacobs, 451 F.2d 530 (5th Cir. 1971), cert. denied, 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231. Defendant has not demonstrated in this case that the trial judge's decision to limit the number of character witnesses constituted a prejudicial abuse of this discretion, particularly in view of the fact that there was no contradictory testimony. It was not necessary under these circumstances to inform the jury that the court was limiting the number of character witnesses.

  (b) *denial of an opportunity for defendant to prove that he was financially unable to post bond immediately and, after posting bond, that he never attempted to flee to Chile;*

■ In its opening statement, the Government referred to Squella as "the big man" and "the importer." To refute the possible inferences from these comments that he was the kingpin in a smuggling operation, defendant sought to show that he was required to remain in prison for several months because of his inability to post a bond of $50,000, allegedly not an inordinately large amount for an underworld figure equal to the Government's inferences.

Moreover, defendant maintains that he was entitled to show the jury that, given the opportunity afforded by a visit to Chile while released on bail, he did not attempt to find safe harbor in his home country, with which the United States has no extradition treaty and to which, as the jury was aware, a co-defendant had escaped.

The Government opposed the use of this proffered testimony on the grounds that it was not proof of innocence and would necessitate a detailed explanation of complex negotiations with the Chilean government regarding defendant's return, a subject far afield from the issues at bar.

The Court, barring defendant's proposed line of testimony, reasoned that it

would have complicated the trial beyond its worth to defendant's defense. Such a determination is properly within the trial court's discretion to refuse attempts to inflate collateral issues and to obscure those which are genuine. *See* Rule 403, Rules of Evidence for the United States Courts and Magistrates.

(c) *denial of an opportunity for defendant to demonstrate to the jury that he could not have physically handled the cocaine in the manner described by the agents;*

■ Squella wanted to demonstrate to the jury that he was physically unable to lift a box weighing 125 pounds, the approximate weight, defendant asserts, of the large box alleged to have contained four fully-packed wine cartons. There was no proof, though, of the weight of each of the boxes either at the time of either their unloading from the airplane or their seizure, and the Government noted that, if a packing arrangement other than that which defendant presented had been employed, then the large box could have weighed less than 125 pounds.

Given these conjectures about the manner of packing, it was not error to refuse the imperfect demonstration. *See* Pacheco v. United States, 367 F.2d 878 (10th Cir. 1966); Burriss v. Texaco, Inc., 361 F.2d 169 (4th Cir. 1966); C. McCormick, Evidence § 215 (1972); and 2 Wharton's Criminal Evidence § 682 (12th ed. 1955).

(d) *granting the Government the permission to introduce as rebuttal testimony the deposition of a co-defendant, Raul DeMaria, who was neither on trial nor present; and*

■ Defendant argues that the deposition of co-defendant DeMaria should not have been admitted because

(1) the indictment which was outstanding at the time the deposition was taken had been superseded;

(2) Squella had not been present at the taking of the deposition and, since DeMaria was not present at the trial, defendant was denied his Sixth Amendment right of confrontation;

(3) the Government should not have been allowed to use a deposition secured by a defendant under Rule 15; and

(4) there was insufficient proof of DeMaria's unavailability.

The trial judge correctly ruled that, in the absence of an extradition treaty with Chile, the unavailability of co-defendant DeMaria had been sufficiently established. United States v. Bentvena, 319 F.2d 916 (2nd Cir. 1963), cert. denied, 375 U.S. 940, 84 S.Ct. 345, 11 L. Ed.2d 271. And Rule 15(e), F.R.Crim. P., which governs the use of depositions, is a complete answer to the other objections to the use of the deposition. Defendant moved to obtain the deposition, and he cannot now object to its use in rebuttal.

(e) *denial of a motion for a new trial based on the fact that the Government knew and had stated prior to trial that the deposition of DeMaria, which it used at trial, was perjured testimony;*

■ It was clear to the jury that the Government was not vouching for the truth of DeMaria's testimony. Rather, it was introduced in rebuttal to demonstrate that defendant and his co-conspirators made inconsistent explanations on material matters. United States v. Wilson, 439 F.2d 1081 (5th Cir. 1971), cert. denied, 404 U.S. 836, 92 S.Ct. 122, 30 L.Ed.2d 67; United States v. Skillman, 442 F.2d 542 (8th Cir. 1971), cert denied, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63.

We find no basis in the claimed procedural and evidentiary errors for the reversal of defendant's conviction.

Affirmed.