**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joaquin GLORIA, Jr., Defendant-**
**Appellant.**

No. 73-2044.

United States Court of Appeals,
Fifth Circuit.

May 6, 1974.

Rehearing and Rehearing En Banc
Denied June 12, 1974.

Vernon F. Knickerbocker, Jerald L. Abrams, Eagle Pass, Tex., for defendant-appellant.

William Sessions, U. S. Atty., James W. Kerr, Jr., Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before DYER, MORGAN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Joaquin Gloria, Jr. was convicted of conspiring to possess with the intent to distribute and of possessing with the intent to distribute 41 pounds of marijuana in violation of 21 U.S.C.A. § 846 and § 841(a)(1). On appeal, he seeks reversal because of several District Court actions: (1) refusal to grant a continuance of Gloria's trial so it could be held after a co-conspirator had pled guilty, (2) proscribing defense counsel from cross-examining a witness on prior misdemeanors, (3) admission of alleged prejudicial rebuttal testimony concerning defendant's reputation for truth and honesty, (4) refusal to direct a verdict on the ground of insufficient evidence, (5) refusal to allow testimony concerning the favorable results of a polygraph test taken by defendant, and (6) refusal to give a requested charge that proximity to marijuana is not possession. By supplemental briefs, Gloria argues that a motion for new trial and a supplemental motion for new trial should have been granted on the ground of newly discovered evidence and suppression by the Government of favorable evidence.

Finding no ground for reversal, we affirm the conviction.

Crispin Santos Mercado, the primary witness for the Government, testified that Gloria approached him on the streets of Eagle Pass, Texas and offered him $200 to make a trip to Batesville, Texas. Lured by the prospect of easy money, Mercado agreed, whereupon he was instructed to leave the keys in his car and "take a walk." After absenting himself for a period of time, Mercado returned to his automobile and began his trip to Batesville. Following Gloria's instructions to utilize a roundabout route, Mercado was stopped by the Border Patrol at Carrizo Springs, Texas. Marijuana was discovered in a suitcase in the car's trunk. Finding himself in a compromising situation, Mercado agreed to help the authorities, whereupon he was allowed to continue his journey but under the close surveillance of customs agents.

At Ted's Place, the Batesville rendezvous, Mercado again met Gloria who instructed him to park the car at the rear of the establishment. Milton George Frey, Jr., a co-defendant, removed the marijuana to another vehicle, conversed with Gloria, and then left in the direction of San Antonio, only to be arrested shortly after his departure. At Ted's Place, Gloria completed the $200 payoff to Mercado. Customs agents arrested both of them.

Each of the three participants was indicted on two counts: conspiracy and possession. Mercado and Frey pled guilty to the conspiracy count and the possession count was dropped as to them. Gloria proceeded to trial and was convicted on both counts.

### 1. Continuance

Gloria alleges that the District Court's denial of his motion for continuance constituted an abuse of discretion and a violation of his Sixth Amendment right to compulsory process for obtaining witnesses. On the day of trial co-defendant Frey was to plead guilty to the conspiracy count. Gloria planned to use Frey as a defense witness. The scheduled plea was postponed for two days, however, due to a death in Frey's family. Gloria moved for a continuance arguing that: Frey was a material witness who, after pleading guilty, could take the stand and exculpate Gloria by denying Gloria's involvement in the criminal activity; the delay was not sought as a dilatory tactic; and the postponement of Frey's plea came as a complete surprise to Gloria.

Gloria's contentions are unpersuasive. He was not denied his right to compulsory process of witnesses because he subpoenaed Frey who appeared at the trial. Frey, however, exercised his Fifth Amendment right against self-incrimination, as he was entitled to do. Even if Frey had entered his plea prior to Gloria's trial, he could still maintain his right against self-incrimination and refuse to testify in Gloria's behalf. His guilty plea would dissolve that right only as to the offense to which he pled guilty. See McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L. Ed.2d 418 (1969). Since he ultimately pled guilty only to the conspiracy count, prosecution on the possession count remained a possibility. Postponing Gloria's trial until that plea was entered would not have produced exonerating testimony for Gloria. Frey's continued invocation of the Fifth Amendment at the subsequent motion for a new trial, after his plea to the conspiracy charge, further highlighted the futility of postponing Gloria's trial. We find no abuse of discretion nor manifest injustice in the denial of a continuance.

### 2. Prior Misdemeanor Impeachment Evidence

The Government's chief witness was Mercado, the co-defendant who delivered the marijuana and whose identification and testimony directly implicated Gloria in the conspiracy. Mercado had been previously convicted on two misdemeanor counts of assisting aliens to illegally enter the United States in violation of 8

U.S.C.A. § 1325. Gloria wanted to use those prior convictions to impeach Mercado's testimony, but was prevented from doing so when the District Court granted the Government's motion in limine to prohibit all references to Mercado's prior non-felony convictions or to convictions of crimes which did not involve moral turpitude.

■ This Court follows the usual rule that felony convictions and misdemeanors involving moral turpitude may be used to impeach the credibility of a witness. Roberson v. United States, 249 F. 2d 737 (5th Cir. 1957), cert. denied, 356 U.S. 919, 78 S.Ct. 704, 2 L.Ed.2d 715 (1958). *See* United States v. Sanchez, 482 F.2d 5 (5th Cir. 1973); United States v. Smith, 420 F.2d 428 (5th Cir. 1970); Pinkney v. United States, 380 F.2d 882 (5th Cir. 1967), cert. denied, 390 U.S. 908, 88 S.Ct. 831, 19 L.Ed.2d 876 (1968); 2 Wharton's Criminal Evidence § 475 (13th ed. 1972); 3A Wigmore, Evidence 980, 986, 987 (Chadbourne rev. 1970); McCormick, Evidence § 43 (1954).

■■ The penalty for a conviction under 8 U.S.C.A. § 1325 is limited to six months confinement and a $500 fine making the violation a misdemeanor under the laws of the United States. 18 U.S.C.A. § 1. To be used as impeachment evidence, therefore, the crime must involve moral turpitude. "Moral turpitude" has been defined by this Court as

> "An act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man."

United States v. Smith, 420 F.2d 428, 431 (5th Cir. 1970), citing Black's Law Dictionary 1160 (Rev. 4th ed. 1957). Generally, a crime involving dishonesty or false statement is considered to be one involving moral turpitude. *See* Rules of Evidence for United States Courts and Magistrates, Rule 609. Convictions of 8 U.S.C.A. § 1325 do not fall

within these classifications, however. We hold the mere assistance of aliens in their attempt to illegally enter the United States is not such a crime of moral turpitude or fraudulent and dishonest conduct to allow its introduction as impeachment evidence against Mercado because proof of its commission is not relevant to show a lack of truthfulness on the part of the witness. *See* 3A Wigmore, Evidence § 926 (Chadbourne rev. 1970).

Gloria's reliance on United States v. Morgan, 155 U.S.App.D.C. 172, 476 F.2d 928 (1973), is misplaced. The witness in *Morgan* had been convicted of making a false report to the police. It was this witness's uncorroborated report which led to Morgan's arrest and conviction. Clearly the prior conviction for false reporting related directly to the witness's credibility in his report against Morgan. Mercado's prior conviction, however, had no such application.

■■ Finally, the scope of cross-examination is a matter subject to the discretion of the trial judge. Roberson v. United States, 249 F.2d 737 (5th Cir. 1957), cert. denied, 356 U.S. 919, 78 S. Ct. 704, 2 L.Ed.2d 715 (1958). In light of Mercado's credibility impeachment flowing from his conspiracy plea in the case at bar, there was no abuse of discretion in not allowing further cross-examination by admitting into evidence his prior misdemeanor convictions, which did not involve moral turpitude.

### 3. *Government Rebuttal Testimony*

After Gloria took the stand to testify on his own behalf, the Government introduced rebuttal testimony concerning his reputation for truth and veracity. Three customs agents testified that they knew of Gloria's reputation in the community and that it was bad.

■ Gloria complains of the manner in which the Government attempted to qualify one witness, Agent Riggs, and challenges his qualifications ultimately established. Agent Riggs delineated the investigative jurisdiction of the Bureau

of Customs to include marijuana and narcotic import violations. The District Court intervened, upheld Gloria's objection, and instructed the jury to disregard the testimony. The curative instruction was sufficient to preclude any prejudicial error in that testimony.

■ Agent Riggs' rebuttal testimony, based on his two years residence in Eagle Pass, Texas, Gloria's home town, is not rendered inadmissible because Riggs spent the nine months preceding trial in Del Rio, Texas, a community some 40 miles from Eagle Pass. During the two years he was in Eagle Pass, Riggs was familiar with Gloria's reputation for truth and veracity in that community and so testified.

■ Gloria also complains of overwhelming prejudice flowing from the insinuation and innuendo of having customs agents testify as to his reputation. The prejudice is obvious. But all rebuttal testimony establishing a defendant's bad reputation prejudices his innocence in the eyes of the jury. That is the function of such testimony. We are only concerned, however, when that testimony prejudices the defendant in some unfair way. Considering that the Government may freely select as a rebuttal witness any person who knows of the defendant's reputation and is willing to so testify, the fact that customs agents were selected and testified against Gloria's reputation does not prejudice him in an unfair way. The insinuation and innuendo flowing from their selection and testimony was insufficient to warrant a reversal.

### 4. Sufficiency of the Evidence

In reviewing a contention that the evidence is insufficient to support a conviction, the Court must view the evidence in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). All reasonable inferences and credibility choices must be drawn from that evidence which will support the jury's verdict of guilty. United States

v. Squella-Avendano, 478 F.2d 433 (5th Cir. 1973).

### a. The Possession Count

■ Gloria contends there was insufficient evidence to establish that he had either actual or constructive possession of the marijuana. He asserts that the Government's evidence is equally consistent with the hypothesis of innocence because anyone could have left the suitcase of marijuana in Mercado's automobile. The evidence is not quite that equivocal.

Gloria approached Mercado in Eagle Pass, offered him $200 to drive to Batesville via Carrizo Springs, instructed Mercado to "take a walk" and leave his keys in his car. Subsequently, Mercado arrived in Batesville and was again instructed by Gloria to park his car in the rear of Ted's Place next to Frey's vehicle. The transfer completed, Gloria paid Mercado the $200.

Mercado's story was corroborated by the arresting agents' testimony that Gloria matched the description given to them by Mercado at Carrizo Springs of the one who arranged the transportation. The agents testified they observed Mercado moving his vehicle to the rear of Ted's Place after a short discussion with Gloria. A search of Mercado after his arrest revealed that he had received $200 after the time he was stopped and searched at Carrizo Springs. This evidence sufficiently establishes that Gloria had at least constructive possession of the marijuana during the period in question because he had "dominion and control" over Mercado who had actual possession. United States v. Martinez, 481 F.2d 214, 221 (5th Cir. 1973).

### b. The Conspiracy Count

■ Gloria challenges the conspiracy count conviction on the ground that the Government failed to prove he conspired with anyone. Arguing that Mercado could not be a co-conspirator because Mercado had no knowledge of the marijuana's existence, he contends that the

Government failed to establish the common purpose essential to proving a conspiracy between him and the remaining participant, Frey.

This argument misses the factual thrust. Assuming Arguendo that Gloria's contention as to Mercado is correct, the evidence establishes that a conspiracy existed between Gloria and Frey. Gloria met Frey at Ted's Place. Upon Mercado's arrival, he instructed Mercado to park his car next to the Chrysler in the rear of the establishment and leave his keys in the car. Shortly thereafter, Frey retrieved Mercado's keys, opened the trunk and removed the marijuana to the Chrysler. After a brief conversation with Gloria, Frey left for San Antonio and Gloria made the $200 payment to Mercado.

The permissible inference that Gloria arranged the transportation of the marijuana from Eagle Pass to Batesville and that he was involved with Frey for its further transportation and disposition is sufficient to support Gloria's conspiracy conviction beyond a reasonable doubt.

### 5. *The Polygraph Examination*

■ The trial court excluded from evidence the results of a polygraph test taken by Gloria, which were favorable to his credibility. Gloria recognizes that American Courts have traditionally held such evidence inadmissible in criminal proceedings on behalf of either the prosecution or defense because the polygraph has not yet been accepted by the courts as a scientifically reliable method of ascertaining truth or deception. Nothing in Gloria's argument persuades us to reverse the exclusion of such evidence under such traditional view, recently reiterated by this Court in United States v. Frogge, 476 F.2d 969 (5th Cir. 1973), cert. denied, 414 U.S. 849, 94 S.Ct. 138, 38 L.Ed.2d 97 (1974).

### 6. *The Charge*

■ Gloria alleges the District Court erred in refusing his requested charge that proximity to marijuana is not possession of marijuana. The law is settled in this Circuit and others that the mere presence of a defendant in the area where contraband is discovered is insufficient to support a finding of possession. United States v. Stephenson, 474 F.2d 1353 (5th Cir. 1973); United States v. Davis, 461 F.2d 1026 (3d Cir. 1972); United States v. Holland, 144 U. S.App.D.C. 225, 445 F.2d 701 (1971). The charge given by the trial judge in this case, however, was sufficient to instruct the jury as to constructive possession, which, if followed, would preclude a conviction on Gloria's mere proximity to the marijuana:

> The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual or physical possession of it. As I have said to you, actual posession means the defendant must actually be shown beyond a reasonable doubt to have physical or actual possession or possession constructively or have constructive possession. A person, who, although not in actual possession knowingly has both the power and the intention at a given time, to exercise conscious dominion or control over a thing, in this case marijuana, either directly or through another person or persons, is then in constructive possession of it. The law recognizes also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession may be said to be joint.
>
> If you find from the evidence beyond a reasonable doubt that the accused, either alone or jointly with others, had actual or constructive possession of marihuana described in the Grand Jury indictment, then you may find that such was in the possession of the accused, within the meaning of the word possession as used in these instructions.

There was no error in refusing the requested charge or in the charge as given. *See* United States v. Virciglio, 441 F.2d 1295 (5th Cir. 1971); Williams v. United States, 361 F.2d 280 (5th Cir. 1966).

### 7. *Motion For New Trial*

#### a. *Original Motion*

 Gloria based his original motion for new trial on the newly discovered evidence that the route utilized by Mercado when assisting aliens to illegally enter the country was similar to the roundabout route he employed in transporting the marijuana in the case at bar. This evidence was found in a statement and prosecution report given at the time of Mercado's prior misdemeanor conviction. Gloria seeks reversal of the denial of a new trial on the ground that the Government suppressed material evidence which it had a duty to search its files for and reveal to the defense.

We have previously held that Mercado's misdemeanor convictions were inadmissible for impeachment of his general credibility. The new evidence establishing that Mercado followed a circuitous route in assisting the illegal entry of aliens is not in material conflict with his testimony. The fact that he used this route merely shows that he knew of its existence. It does not substantially impeach his statement that Gloria instructed him to follow that route in this case. Defense counsel demonstrated to the Court at oral argument through the use of a map that only two roads exist to travel from Eagle Pass to Batesville. Mercado's knowledge and prior use of those routes, even in transporting aliens, does not contradict his testimony that Gloria instructed him to go to Batesville through Carrizo Springs. There could be no reversible error in the alleged governmental suppression of such evidence, and the discovery of such evidence does not provide sufficient grounds for a new trial.

#### b. *Supplemental Motion for New Trial*

A supplemental motion for new trial was based on a letter from Frey to Gloria's attorney with an affidavit exculpating Gloria. Alleging newly discovered evidence in that Frey showed in his letter that he knew without communicating with Gloria that Mercado was transporting the marijuana, Gloria sought a new trial. After an evidentiary hearing at which Frey relied on his Fifth Amendment privilege against self-incrimination and refused to testify, the District Court denied the motion. We find no merit in any of the various grounds asserted for a new trial.

(a) Gloria contends Frey's reliance on his privilege against self-incrimination was improper since he had pled guilty to the conspiracy count. But as we discussed earlier, his guilty plea to the conspiracy count did not waive his constitutional right as to other violations. Frey could not be required to exonerate Gloria at the risk of incriminating or perjuring himself.

 (b) Frey's testimony as to some matters at the evidentiary hearing did not amount to a waiver of his right against self-incrimination in relation to other matters.

(c) Gloria's thorough examination of Frey at the hearing belies the allegation that the District Court failed to make an individual determination as to the merits of each claim of privilege. Frey answered some questions and refused to answer others. The Court ruled on his claim with respect to each specific question that he declined to answer.

 (d) The warning to Frey by the District Court and the prosecutor that he was subject to a perjury charge should his testimony materially differ from his prior plea were not improper or misleading. Gloria's reliance on Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972), is misplaced. In *Webb,* prejudice was found in threaten-

ing the witness with certain prosecution if he testified. That prejudice is not present in this case because Frey was merely advised of the possibility of prosecution if his testimony materially differed from his prior plea, not that he would be prosecuted if he testified.

(e) Prior to the evidentiary hearing, Frey requested an out-of-court and off-of-the-record conference during which he related details of his prior marijuana dealings. All counsel were privy to this conference. At the hearing before the court Frey invoked his Fifth Amendment privilege concerning questions about those dealings. Gloria then called the Assistant United States Attorney to testify as to Frey's out-of-court statements. There was no error in the District Court's refusal to allow that testimony in light of its questionable relevance and hearsay nature.

(f) At the conclusion of the evidentiary hearing Frey's testimony had not produced any new evidence upon which to base a new trial. There was no error in the denial of Gloria's motion.

Affirmed.