UNITED STATES of America, Plaintiff-Appellee,

v.

Agha Kaleem Ullah KHAN, Defendant-Appellant.

No. 83–1245.

United States Court of Appeals, Fifth Circuit.

March 15, 1984.

Reconsideration and Rehearing En Banc Denied April 19, 1984.

---

Allen F. Cazier, court-appointed, San Antonio, Tex., for defendant-appellant.

Sidney Powell, John Murphy, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, REAVLEY and WILLIAMS, Circuit Judges.

REAVLEY, Circuit Judge:

Agha Kaleem Ullah Khan (Khan) appeals from a conviction of conspiracy to possess heroin with intent to distribute and possession of heroin with intent to distribute. *See* 21 U.S.C. §§ 841(a)(1), 846 (1976); 18 U.S.C. § 2 (1976). Khan argues that he was deprived of his right to compulsory process under the Sixth Amendment by the district court's failure to recess the trial until a codefendant's guilty plea had been accepted. Khan also contends that the district court erred by failing to dismiss the indictment's conspiracy count for its lack of an overt act allegation and by failing to grant Khan's motion for judgment of acquittal based on insufficiency of the evidence. We affirm.

## I

The events leading to Khan's conviction began when a government informant in San Antonio, Texas, contacted his friend Gul Riaz, who resided near Chicago, Illinois. The informant attempted to get Riaz to find persons interested in purchasing cocaine. In late November 1982 Ali S. Khan (Ali) and Khan visited Riaz and expressed an interest in selling heroin. After Riaz contacted the informant, telephonic negotiations began for the delivery and purchase of one pound of high purity heroin. The informant was to act as the middle man between Ali and Khan and the San Antonio "purchasers," who were actually Drug Enforcement Agency (DEA) officials. Ali and Khan flew from Chicago to New York, where they apparently picked up the heroin, and proceeded to San Antonio where the informant met them.

The informant introduced the DEA agents to Ali at a San Antonio hotel, where they made arrangements for the transfer of cash for heroin. Later, while DEA agents waited in a car parked outside the hotel, the informant and Ali walked toward the car, with Khan trailing some distance behind. As Khan waited behind a van, the informant and Ali reached the car. The informant entered the vehicle and Ali, not having the heroin, walked over to Khan's location for a moment and returned to the car with the heroin. The DEA agents arrested Ali and Khan shortly thereafter.

The indictment named Khan, Ali, and Riaz in both counts—conspiracy and the substantive charge of possessing heroin with intent to distribute. Khan filed a motion for severance, pursuant to Rule 14, Fed.R.Crim.P., alleging that Ali would testify to Khan's innocence if the motion were granted. Because Riaz and Ali entered into plea agreements,[1] the motion became moot, and Khan went to trial alone on February 15, 1983. The district judge had scheduled Ali's re-arraignment for February 25, 1983. On the third day of his trial, February 17, Khan moved to continue the trial until af-

ter Ali's re-arraignment or, in the alternative, to recess so that the court could accept Ali's plea. The district court denied the motion. The jury later found Khan guilty on both counts.

## II

◼ The Sixth Amendment gives an accused the right of compulsory process to obtain witnesses in his behalf. *See, e.g., Dickerson v. Alabama,* 667 F.2d 1364, 1369 (5th Cir.), *cert. denied,* 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982). "This right is a fundamental element of due process of law." *Id.* (quoting *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967)). This circuit has set forth factors for courts to consider "in determining whether an accused was deprived of his right to compulsory process by a denial of a motion for a continuance...." *Id.* at 1370.

> [T]he diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.

*United States v. Uptain,* 531 F.2d 1281, 1287 (5th Cir.1976), *quoted in Dickerson,* 667 F.2d at 1370; *Hicks v. Wainwright,* 633 F.2d 1146, 1149 (5th Cir.1981).

The *Dickerson* court cautioned, however, that "[n]ot every denial of a motion for continuance to obtain witnesses violates the accused's right to compulsory process." 667 F.2d at 1369–70. For example, an accused's right to compulsory process must give way to the witness' Fifth Amendment privilege not to give testimony that would tend to incriminate him. *See United States v. Goodwin,* 625 F.2d 693, 700 (5th Cir.1980); *United States v. Lacouture,* 495 F.2d 1237, 1240 (5th Cir.), *cert. denied,* 419 U.S. 1053, 95 S.Ct. 631, 42 L.Ed.2d 648 (1974); *see also*

---

1. Ali agreed to plead guilty on the possession-with-intent-to-distribute count, understanding that the conspiracy count would be dismissed if the district court accepted the plea.

*United States v. Turkish,* 623 F.2d 769, 774 (2d Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981); *United States v. Trejo-Zambrano,* 582 F.2d 460, 464 (9th Cir.), *cert. denied,* 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 682 (1978). This conflict between the Fifth and Sixth Amendments was not presented in *Dickerson,* where the potential alibi witnesses were not codefendants nor would their testimony have incriminated them.

The cases often present the situation where one of several defendants seeks severance so that he may obtain exculpatory testimony from his codefendant. To assure economy of judicial resources, the movant is required to make a substantial showing before being entitled to severance. "To qualify for a severance in order to obtain the testimony of a codefendant, a criminal defendant must show: '(1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant will in fact testify if the cases are severed.'" *United States v. Ruppel,* 666 F.2d 261, 268 (5th Cir.) (quoting *United States v. Butler,* 611 F.2d 1066, 1071 (5th Cir.), *cert. denied,* 449 U.S. 830, 101 S.Ct. 97, 66 L.Ed.2d 35 (1980)), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982).

> Given such a showing, the court should (1) examine the significance of the testimony in relation to the defendant's theory of defense; (2) assess the extent of prejudice caused by the absence of the testimony; (3) pay close attention to judicial administration and economy; (4) give weight to the timeliness of the motion.

*Butler,* 611 F.2d at 1071 (citations omitted). *See* 1 C. Wright, *Federal Practice and Procedure* § 225 at 831–40 (2d ed. 1982).

This case does not present a severance issue, as Khan's motion for severance became moot when his codefendants agreed to plead guilty. We think, however, that the same factors quoted above may be applied to determine whether the district court's denial of Khan's motion for recess or a continuance deprived Khan of his right to compulsory process or otherwise constituted an abuse of discretion.

Khan satisfied the requirement that he indicate the substance of the testimony that Ali would give. When asked whether the government had any *Brady* material, the prosecuting attorney replied that Ali had said that Khan "had nothing to do with it." In light of the evidence linking Ali and Khan, however, any exculpatory testimony given by Ali would have been subject to damaging cross-examination, reducing the exculpatory effect of Ali's testimony. *See Byrd v. Wainwright,* 428 F.2d 1017, 1020 (5th Cir.1970).

Khan sought Ali's testimony to corroborate Khan's defense that he was in Texas merely to initiate legitimate business deals and had no knowledge of any scheme to sell heroin. The jury, however, heard substantially similar testimony by Jim Wilburn, a private investigator. Wilburn stated that Riaz had said that Khan was not involved in the heroin scheme and that he had been "set up" by the government's informant.[2]

Assuming that Ali's testimony would have had an exculpatory effect, we find that Khan failed to demonstrate that Ali would testify for Khan if the district court had granted the motion for a continuance. *See Ruppel,* 666 F.2d at 268–69; *United States v. Grapp,* 653 F.2d 189, 192–93 (5th Cir.1981); *cf. United States v. Martinez,* 486 F.2d 15 (5th Cir.1973).

Khan called Ali to the witness stand in the absence of the jury, and Ali refused to answer every question asked of him, pleading his Fifth Amendment right not to incriminate himself. Khan's counsel asked Ali, "If you are able to answer these questions without the fear of giving evidence against yourself, would you be willing to testify on behalf of Agha Kaleem Ullah Khan?" Ali replied, "I refuse that question, too, sir."

---

**2.** The government made no hearsay objection to Wilburn's testimony at this point during trial.

Khan contends that only a minor delay in Khan's trial would have occurred if the district court had called a recess long enough to accept Ali's guilty plea on the possession count. Once the court had taken Ali's plea, Khan argues, Ali's Fifth Amendment privilege as to the heroin transaction would have dissolved and Khan would then have been able to compel Ali's testimony.

We confronted an argument and fact situation similar to Khan's in *United States v. Gloria*, 494 F.2d 477 (5th Cir.), *cert. denied*, 419 U.S. 995, 95 S.Ct. 306, 42 L.Ed.2d 267 (1974). Gloria, Frey, and Mercado were charged with conspiracy and possession of marijuana with intent to distribute. Mercado and Frey were scheduled to plead guilty to the conspiracy count on the day of Gloria's trial. Gloria planned to use Frey as a witness. A death in Frey's family, however, delayed the arraignment for two days. Gloria then moved for a continuance for virtually the same reasons that Khan urged below.

The *Gloria* court found that the district court had not abused its discretion by denying Gloria's motion for a continuance.

> Since he ultimately pled guilty only to the conspiracy count, prosecution on the possession count remained a possibility. Postponing Gloria's trial until that plea was entered would not have produced exonerating testimony for Gloria. Frey's continued invocation of the Fifth Amendment at the subsequent motion for a new trial, after his plea to the conspiracy charge, further highlighted the futility of postponing Gloria's trial.

*Id.* at 480.

Courts consistently grant witnesses wide berth in asserting the privilege not to testify due to fear of self-incrimination. *See, e.g., Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). For example, this and other circuit courts of appeal have sustained witnesses' invocation of the Fifth Amendment privilege after a guilty plea but prior to sentencing. *See United States v. Lyons*, 703 F.2d 815, 818 & n. 2 (5th Cir.1983); *United States v. Barham*, 625 F.2d 1221, 1225 (5th Cir.1980), *cert. denied*, 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 205 (1981); *see also United States v. Moore*, 682 F.2d 853, 856 (9th Cir.1982); *United States v. Lowell*, 649 F.2d 950, 961–64 (3d Cir.1981); *United States v. Domenech*, 476 F.2d 1229 (2d Cir.), *cert. denied*, 414 U.S. 840, 94 S.Ct. 95, 38 L.Ed.2d 77 (1973). Moreover, the privilege against self-incrimination has been upheld even where the witness invoking the privilege has been convicted and sentenced. *See United States v. Metz*, 608 F.2d 147, 156 (5th Cir.1979), *cert. denied*, 449 U.S. 821, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980); *see also United States v. Rodriguez*, 706 F.2d 31, 36–37 (2d Cir.1983); *United States v. Johnson*, 488 F.2d 1206, 1209–10 (1st Cir.1973).

In light of the expansive scope given to assertions of the Fifth Amendment privilege, the district court was clearly correct to deny Khan's motion for a continuance when Khan had not shown a likelihood that Ali would testify after his plea had been accepted. At oral argument Khan suggested that the district court had not understood that the motion for a continuance was to vindicate Khan's Sixth Amendment right of compulsory process. The record, however, reveals that the trial judge was well aware of the claim being made when he denied the motion. Later that day the judge read into the record the authority on which he had made his ruling, *United States v. Houghton*, 554 F.2d 1219 (1st Cir.), *cert. denied*, 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977).

*Houghton*, like *Gloria*, closely resembles the facts and issue presented by the instant case. Houghton's codefendant Harvey had agreed to plead guilty on one count of distributing cocaine, understanding that two other counts would be dismissed if Harvey's plea was accepted. Houghton went to trial before the district court conducted a Rule 11 hearing for Harvey. Fed.R.Crim.P. 11. When Houghton put Harvey on the stand, he invoked his privilege against self-incrimination. The district court denied a motion to conduct Harvey's plea hearing before Houghton's trial proceeded further. The First Circuit analogized the situation to a motion for severance and concluded that

the district court properly refused to re-arraign Harvey during Houghton's trial:

> [T]he holding of a Rule 11 hearing and the acceptance of a guilty plea from Harvey by the district court could not constitute a waiver of his Fifth Amendment right against self-incrimination. Sentence would probably not have been imposed at that time and Harvey, at the very least, had the right to refuse to testify until after he was sentenced.
>
> There was no indication by either Harvey or his counsel that any testimony, exculpatory or otherwise, would be forthcoming if there were a Rule 11 hearing.

*Id.* at 1222 (citation omitted).

Khan suggested at oral argument that he should only be required to show that the sought witness was *available,* not that the witness codefendant would be *willing* to testify if the court granted the requested continuance. We disagree. The showing of willingness is essential to insure that judicial resources are not wasted. Otherwise, trials could be delayed for a period of time to obtain testimony from a witness who, despite pleading guilty, might not testify for the defendant.

■ A court's denial of a continuance does not constitute an abuse of discretion unless the movant shows that he was seriously prejudiced by the denial. *See, e.g., United States v. Davila,* 704 F.2d 749, 753 (5th Cir.1983); *United States v. Brown,* 699 F.2d 704, 709 (5th Cir.1983). Since there was no showing that Ali would give exculpatory testimony if the court had granted a continuance, we cannot say that Khan was seriously prejudiced by the lower court's ruling. *See United States v. Morrow,* 537 F.2d 120, 135 (5th Cir.1976), *cert. denied,* 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). Any prejudice that Khan suffered by the denial of his motion was outweighed by the public's "interest in the prompt and efficient administration of justice, and the trial court['s interest] in the management and control of its own docket." *Alford v. United States,* 709 F.2d 418, 424 (5th Cir. 1983). Far more justification for the recess motion would have been necessary to re-

quire the court to interrupt a trial at this stage. The jury had heard the government's case-in-chief and trial would have been delayed for some time—eight days or possibly less if Ali were prepared and the sentencing investigation completed. The motion was untimely and granting it would have imposed severely upon judicial administration and economy.

### III

■ Khan argues that the district court should have dismissed the conspiracy count of the indictment because it did not allege any overt act, thereby failing to give him fair and adequate notice of the charge. This argument has no merit. We have consistently held that an indictment need not allege an overt act in furtherance of the conspiracy if the indictment alleges a conspiracy to distribute drugs, the time the conspiracy was operative, and the statute allegedly violated. *See United States v. Brown,* 692 F.2d 345, 348 (5th Cir.1982); *United States v. Hawkins,* 661 F.2d 436, 454 (5th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 72, 74 L.Ed.2d 71 (1982); *see also United States v. Vergara,* 687 F.2d 57, 61 n. 3 (5th Cir.1982). The indictment naming Khan was sufficient since it charged the offense in the words of 21 U.S.C. § 846, named the statute violated, and specified the duration of the conspiracy's operation. *See United States v. Marable,* 578 F.2d 151, 154 (5th Cir.1978).

■ Khan also contends that the district court erred by failing to grant his motion for judgment of acquittal because the evidence was insufficient to convict him on the possession count. Viewing the evidence from the perspective most favorable to the government, a reasonably minded jury could conclude beyond a reasonable doubt that Khan knowingly possessed the heroin and intended to distribute it. *See United States v. Vergara,* 687 F.2d 57, 60–62 (5th Cir.1982); *United States v. Richards,* 638 F.2d 765, 768–69 (5th Cir.), *cert. denied,* 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981).

AFFIRMED.