805 F.2d 1037
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Harvey HARDMAN, Defendant-Appellant.
 No. 86-5524.
 United States Court of Appeals, Sixth Circuit.
 Oct. 30, 1986.
 
 Before MILBURN and BOGGS, Circuit Judges, and HARVEY, Senior District Judge*.
 PER CURIAM.
 
 
 1
 Defendant James Hardman appeals the judgment and sentence of the district court entered on a jury verdict of guilty of two counts of aiding and abetting the unlawful distribution of cocaine in violation of 18 U.S.C. Sec. 2 and 21 U.S.C. Sec. 841(a)(1). The issues raised are (1) whether the district court erred in denying defendant's motion for judgment of acquittal based on defendant's assertion that the evidence was insufficient to support a conviction; (2) whether defendant was denied a fair trial due to the introduction of testimony concerning marijuana; and (3) whether the district court erred in denying defendant's motion for a severance. For the reasons that follow, we affirm.
 
 I.
 
 2
 In June, 1984, Agent Coleman Ramsey of the Drug Enforcement Agency (DEA) received a telephone call from a government informant, Diana Williams, who informed him she knew an individual who wished to sell cocaine. Agent Ramsey contacted DEA Agent Stanley Persinger and a meeting was arranged for June 26, 1984, in Bristol, Tennessee, at the Hitching Post Lounge. At that meeting, Agents Persinger and Ramsey met informant Williams and co-defendant Keith Sharpe. Although Sharpe offered to sell the agents two ounces of cocaine, no purchase was made at that time. However, arrangements were discussed regarding Sharpe's offer to supply the agents with as much as a kilogram of cocaine.
 
 
 3
 Over the next several weeks, Ramsey and Sharpe engaged in a series of telephone conversations discussing the prospective cocaine deal. Ultimately it was arranged that Sharpe would meet informant Williams at her trailer in Wise, Virginia, on July 29, 1984. Defendant Hardman was present at that meeting, during which Sharpe stated he wished to sell some cocaine and showed Williams four ounces of cocaine.
 
 
 4
 On August 4, 1984, Williams went to the Traveler's Hotel in Pound, Virginia, to meet Sharpe. Upon her arrival, Hardman informed her Sharpe would return shortly. Williams testified that defendant Hardman told her he had nothing to do with the cocaine. Williams met with Sharpe later in the day and discussed further cocaine transactions. Hardman was not present at that time.
 
 
 5
 On August 6, 1984, Williams met defendant Hardman and Sharpe at their hotel room. Williams testified that she discussed cocaine with Sharpe in the presence of Hardman and that the cocaine was located in the hotel room. Sharpe then drove Hardman's car to Kingsport, Tennessee, followed by Williams, where Sharpe sold Agent Persinger two ounces of cocaine.
 
 
 6
 On August 8, 1984, another buy was scheduled at Hawkeye's Bar in Knoxville, Tennessee. Agents Persinger and William McGinnis of the Knoxville Police Department met defendant Hardman and Sharpe at the bar, where marijuana and cocaine were discussed. Agent McGinnis testified that Hardman participated in the conversation concerning cocaine and that Hardman and Sharpe both replied affirmatively when asked whether the cocaine was as good as the last, defendant Hardman stating it was "the same as the other."
 
 
 7
 The four then left the bar and departed in Hardman's car, with Hardman driving. At Sharpe's direction, Agent Persinger retrieved the bag of cocaine from the console between Persinger and Hardman. The parties stopped at a grocery store which Persinger entered to purchase beer. Agent McGinnis testified that while Agent Persinger was in the store, defendant Hardman admired the kit McGinnis was using to test the cocaine, stating it would be nice to have in their line of work. When Agent McGinnis attempted to negotiate the $2,000 price for the cocaine, defendant Hardman stated, "This is the price we've got to have. That's what we've got in it. That's what we've got to have."
 
 
 8
 After Persinger returned to the car, defendant Hardman drove the parties back to Hawkeye's. Persinger testified that Sharpe and Hardman both talked about the next meeting and that Hardman advised that he had a friend with a cabin near LaFollette, Tennessee, where they could meet the next time. The events of August 8, 1984, formed the basis of count two of the indictment.
 
 
 9
 On August 27, 1984, Sharpe telephoned Agent Persinger and informed him that he was at the cabin in LaFollette with seven ounces of cocaine for sale. They agreed to meet at Darryl's Restaurant in Knoxville. When Agents Persinger and McGinnis arrived, they met defendant Hardman, Sharpe, and Sharpe's brother, defendant James Sharpe (hereinafter "James"). The parties entered Sharpe's car where a discussion ensued as to where to conduct the cocaine transaction. Sharpe was hesitant to remain in Darryl's parking lot because he feared people could see out the windows of the restaurant. Defendant Hardman replied, "You can't even see the parking lot from inside."
 
 
 10
 Sharpe then drove out of the parking lot. At one point, Agent Persinger stated he didn't want to enter the next county because "they knew me and I didn't want to get in any trouble." Defendant Hardman replied, "I'll go along with you, Joe." (Joe was Persinger's undercover name.) The cocaine was then tested in the car in Hardman's presence. The parties then returned to Darryl's where defendants were arrested. Thereafter, at the Organized Crime Unit, defendants were allowed to make telephone calls. At that time, Persinger overheard Sharpe tell his brother James that he (Sharpe) would take the blame for everything and just say that they (James and Hardman) were along for the ride. The events of August 27, 1984, formed the basis for count three of the indictment.
 
 
 11
 Neither of the Sharpe brothers testified at trial. Defendant Hardman testified that he was disabled, unemployed and an alcoholic. He testified that he met Sharpe one and one-half years earlier and that they were casual friends. Hardman became involved in the scheme when Sharpe offered him $250 in early August to drive Sharpe to Virginia. Hardman admitted to being present at the times related above. However, he testified to being in an alcoholic haze during those times. Hardman denied making any comments about cocaine and denied any knowledge of the cocaine deals.
 
 II.
 A. Sufficiency of the Evidence
 
 12
 Defendant Hardman argues that the district court erred in denying his motion for a judgment of acquittal because the government failed to establish by proof beyond a reasonable doubt that he aided and abetted the distribution of cocaine. Defendant further argues that the proof shows no more than that he was present during the cocaine transactions. He asserts there is no evidence he was a willful participant. Additionally, defendant argues that the evidence establishes that he had nothing to do with setting up any of the meetings and that he never handled the cocaine or the money. Finally, defendant notes that Agent Persinger testified that defendant's presence did not add a thing to either transaction.
 
 
 13
 The proper standard of review is set forth in United States v. Steele, 727 F.2d 580 (6th Cir.), cert. denied, 467 U.S. 1209 (1984):
 
 
 14
 It is well-settled that an appellate court considers, after viewing the evidence in the light most favorable to the prosecution, that any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
 
 
 15
 Id. at 587 (citing Stacy v. Love, 679 F.2d 1209 (6th Cir.), cert. denied, 459 U.S. 1009 (1982)). In so considering the evidence, the reviewing court must find that there is substantial evidence to support the verdict. See United States v. Green, 548 F.2d 1261 (6th Cir.1977):
 
 
 16
 Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred.
 
 
 17
 Id. at 1266 (quoting United States v. Martin, 375 F.2d 956, 957 (6th Cir.1967)).
 
 
 18
 In United States v. Winston, 687 F.2d 832 (6th Cir.1982), we set forth what is and what is not necessary to establish the crime of aiding and abetting in the distribution of cocaine:
 
 
 19
 It is a well recognized rule that to be found guilty of the crime of aiding and abetting in a criminal venture, a defendant must " 'in some sort associate himself with the venture that he participate in it as in something he wishes to bring about, seek by his action to make it succeed.' " ...
 
 
 20
 We reject the contention of appellant that it must be found that he had an interest or stake in the transaction before he could be convicted for aiding and abetting....
 
 
 21
 Moreover, it is not necessary that appellant actually touched or possessed the cocaine.... It merely must be shown that appellant "act[ed] or fail[ed] to act with the specific intent to facilitate the commission of a crime by another."
 
 
 22
 We agree with appellant that "mere presence at the scene of the crime and guilty knowledge of the crime" are not sufficient alone, ..., and that "the defendant [must be] a participant rather than merely a knowing spectator," ... before he can be convicted of aiding and abetting.
 
 
 23
 Id. at 834-35 (citations omitted).
 
 
 24
 Under these standards, there is substantial evidence to support defendant Hardman's convictions. The evidence shows that he knowingly provided the means (his car and himself as driver) to facilitate the commission of the crimes. As to the transaction on August 8, 1984, defendant discussed the cocaine, assuring the agents it was as good as the last, and even negotiated the price with Agent McGinnis. Furthermore, defendant demonstrated his desire to bring about the August 27, 1984, sale by assuring Sharpe that they could not be seen from inside Darryl's. Construed in the light most favorable to the government, the evidence is sufficient to sustain the convictions.
 
 B. Testimony Concerning Marijuana
 
 25
 Defendant Hardman argues he was denied a fair trial by the testimony of Agent Persinger concerning marijuana. Defendant filed a motion in limine contending that any references to marijuana at trial would be inadmissible under Federal Rule of Evidence 404(b). The government replied that the evidence was admissible to explain an integral part of the case; viz., that the agents were posing as marijuana dealers. The court reserved judgment on the motion. However, during trial, Agent Persinger related several conversations during which marijuana was discussed. The district court declined to sustain defendant's objections and motion for a mistrial, but cautioned the jury on three occasions that "any reference to marijuana only has reference to a sequence of events to get the people together" and that the jury was not to "consider marijuana at all" in connection with the offenses charged.
 
 Rule 404(b) provides:
 
 26
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 27
 This court has set forth the following standards for reviewing the admission of evidence challenged under Rule 404(b):
 
 
 28
 [W]e must make two determinations. First, we must decide whether [the evidence] was admissible for any proper purpose, as distinct from the improper purpose of showing "character" or "propensity." ... If we conclude that there was a proper basis for admission, we must then consider whether the probative value of the evidence outweighed its potential prejudicial effects.... In the second instance, the standard of review on appeal is whether the trial judge abused his discretion in admitting the evidence....
 
 
 29
 United States v. Vincent, 681 F.2d 462, 465 (6th Cir.1982) (citations omitted); see also United States v. Townsend, 796 F.2d 158, 161-62 (6th Cir.1986); United States v. Ismail, 756 F.2d 1253, 1258-59 (6th Cir.1985); United States v. Hamilton, 684 F.2d 380, 384 (6th Cir.), cert. denied, 459 U.S. 976 (1982).
 
 
 30
 The government argues, and we agree, that the testimony concerning marijuana represented an integral part of conversations relating to the illegal transactions at issue. As such, the evidence was admitted for a proper purpose. See Vincent, supra, 681 F.2d at 465 (evidence of other crimes, closely related in time and nature to the crimes charged, which establish the common scheme or history of the crimes charged, is admissible); United States v. Bloom, 538 F.2d 704, 707 (5th Cir.1976) (in prosecution for heroin distribution, no error in admission of evidence concerning cocaine and marijuana, which was an "integral and natural" part of the agents' accounts), cert. denied, 429 U.S. 1074 (1977).
 
 
 31
 We must next decide whether the probative value of the evidence outweighed its potential prejudicial effects. The government argues the evidence was important to explain the agents' cover story, in particular why Agent McGinnis entered the story. Defendant argues the evidence was unfairly prejudicial because it tended to show defendant had a criminal disposition to commit controlled substances offenses. The district court believed the evidence was not "overly prejudicial."
 
 
 32
 On balance, we believe the district court did not abuse its discretion in admitting the evidence. The probative value of the evidence outweighed its potential prejudicial effects, especially in light of the district court's emphatic cautionary instructions to the jury. See Townsend, supra, 796 F.2d at 162.
 
 C. Severance
 
 33
 Defendant Hardman's final argument is that he was denied due process of law by the district court's denial of his motion for severance. In particular, defendant argues the denial of his severance motion precluded him from obtaining exculpatory testimony from his co-defendants.
 
 
 34
 A motion for severance is committed to the sound discretion of the trial court. United States v. Robinson, 707 F.2d 872, 879 (6th Cir.1983). The trial court's decision will be reversed only upon a showing of clear abuse of discretion. United States v. Hamilton, 689 F.2d 1262, 1275 (6th Cir.1982), cert. denied, 459 U.S. 1117 (1983). Moreover, defendant has a "difficult" burden of showing prejudice. Id. "A denial of severance will rarely be reversed on review, ..., and then only for the most 'cogent reasons.' " Id. (citations omitted).
 
 
 35
 We observe at the outset that the joinder of the parties was permissible under Federal Rule of Criminal Procedure 8(b):
 
 
 36
 Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.
 
 
 37
 Because defendant Hardman and the Sharpe brothers were all charged with participating in the same series of transactions, joinder was proper. Persons properly joined in an indictment should be tried together, "particularly ... where the offenses charged may be established against all the defendants by the same evidence." Robinson, 707 F.2d at 879.
 
 
 38
 Where a criminal defendant alleges he was prejudiced because the denial of the motion for severance prevented co-defendants from testifying on the defendant's behalf, he must show " '(1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant will in fact testify if the cases are severed.' " United States v. Khan, 728 F.2d 676, 679 (5th Cir.1984) (quoting United States v. Ruppel, 666 F.2d 261, 268 (5th Cir.), cert. denied, 458 U.S. 1107 (1982)).
 
 
 39
 Although the government argues defendant has failed to satisfy all four factors, this case can be disposed of based on the fourth factor. Defendant's attorney filed an affidavit wherein he averred that co-defendants' counsel indicated that the Sharpe brothers were willing to testify that Hardman had no pecuniary interests in the cocaine or anything to do with the possession or distribution of the cocaine and that Hardman was merely along for the ride. The affidavit concluded with the statement that the Sharpe brothers "more likely than not would testify on behalf of Mr. Hardman, if the cases were severed, and Mr. Hardman's trial were later."
 
 
 40
 This statement is insufficient to meet the fourth Khan factor. First, the co-defendants' conditional offer to testify if they were tried first will not support a finding that the district court abused its discretion in denying the motion for severance. See United States v. Becker, 585 F.2d 703, 706 (4th Cir.1978), cert. denied, 439 U.S. 1080 (1979).
 
 
 41
 Second, the statement that the Sharpe brothers "more likely than not would testify" is too equivocal to satisfy the requirement of a showing that the co-defendants "will in fact testify." Khan, 728 F.2d at 679 (emphasis supplied); see also United States v. Whitley, 734 F.2d 1129, 1139 (6th Cir.1984).
 
 
 42
 Finally, at a bench conference during trial, co-defendants' counsel indicated there had been a change in tactics since Hardman's counsel filed his affidavit and that if the Sharpe brothers were called as witnesses by Hardman, counsel would advise them to take the Fifth Amendment, "regardless of whether the case was [severed] or not." Under these circumstances, defendant has failed to meet his burden of showing the district court abused its discretion in denying the motion for severance.
 
 III.
 
 43
 Accordingly, for the reasons stated, the decision of the district court is AFFIRMED.
 
 
 
 *
 Honorable James Harvey, Senior District Judge, United States District Court for the Eastern District of Michigan, sitting by designation